JAMES J. RYAN, ET AL. *v.* HAROLD HERBERT, ET AL.

[No. 124, October Term, 1945.]

*Decided May 15, 1946.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, and HENDERSON, JJ.

*J. Richard Wilkins* and *J. Francis Ford,* with whom was *Joseph H. A. Ryan* on the brief, for the appellant.

*Randolph Barton, Jr.,* with whom was *Lee S. Meyer* on the brief, for the appellees.

MARBURY, C. J., delivered the opinion of the Court.

The petition, through which this case arises, was filed on July 10, 1945, in a proceeding in the Circuit Court of Baltimore City, instituted about 15 years before, for the purpose of passing upon questions involved in a trust under the will of Arthur Nattans, who died in Baltimore 40 years ago. The petition was filed by those receiving income under the trust. The trustees also joined. The purpose was to obtain a declaratory decree construing the rights of the petitioners and others to certain income bequeathed under the tenth section of the will. All living persons who might possibly have an interest were made parties, and guardians *ad litem* were appointed for the minors. The present appeal is taken by a guardian *ad litem* for two great grandchildren of the testator who have no present interest in the income, but whose possible interest in it is denied by the decree appealed from. Their guardian *ad litem* questions the propriety of a declaratory decree at this time and also questions the correctness of the decree passed. Before we discuss these matters, the will and the asserted facts will be considered.

The will is somewhat unusual, due to the circumstances under which the testator found himself. He owned 396 shares out of a total outstanding issue of 400 shares of common stock of The Read Drug and Chemical Company. This was apparently the most valuable item in his estate. From it he arranged a trust estate to last until the death of the last one of his children. This was done by paragraph 6 of the will. He had eight children living at his death, and each of these children was specifically named, and the income from a certain number of shares was bequeathed to each. The number of shares differed. Edith Nattans Hecht, Hortense Nattans Solomon and Rita Nat-

tans Myers each received the income from 60 shares; Arthur Nattans, Ralph Nattans and Emily Nattans Herbert each received the income from 40 shares, and Addie Nattans Bachrach and Samuel A. Nattans each received the income from 29 shares. This made a total of 358 shares from which the income went to his children. The income from the remaining 38 shares was given to others, and we are not now concerned with this. The tenth paragraph of the will provides what is to happen in the event of the death of any of the children, and what is to happen to the entire trust at the death of the last survivor. As this is the paragraph containing the clause which was interpreted by the decree appealed from, we insert it in full.

"Tenth: In the event of the death of any of my children above named, during the continuance of this trust, without leaving issue him or her surviving, the income herein given to the child so dying without issue living at his or her death shall be divided equally among his or her surviving brothers and sisters annually during the continuance of this trust. And in the case of the death of any one of my said children during the continuance of said trust leaving issue him or her surviving, the income of the share of the one so dying shall go to and become the property of his or her child, if only one, or children, if more than one, equally, share and share alike. Upon the death of the last survivor of all of my said eight children this trust shall cease, and thereupon the entire trust property shall be divided by my said Trustees, or their successors in the trust among the issue and desecendants of such of my children as may have died leaving lawful issue him or her surviving *per stirpes* and not *per capita*. And the said trustees, and their successors in the trust, are authorized and directed to make, execute and deliver all such deeds and instruments of conveyance or assignment as may be necessary to make said division".

The present proceeding is concerned entirely with income and has nothing to do with the final disposition of the corpus of the trust estate, which by the terms of the

tenth section is not divided in the same manner as the income. The present situation is that four of the children have died, each of them survived by children, and there are four living children, three of whom now have children living, and one of whom has no descendants living. Under a decree passed in the case on December 28, 1942, the income of the three then deceased children was directed to be paid to their living children who are the grandchildren of the testator. The same situation now exists as to the income of another child since dying, who left two children. None of these children of the testator left issue of deceased children. The two questions which the Court is now asked to pass upon are "(a) in the event of the death of a child of the Testator survived by issue, must the issue thereafter to take such child's income be literally only a child or children of the dying child, or in the event of there being at that time any deceased child of the dying child having issue at that time surviving would such issue take *per stirpes* the share of income that the said deceased child would have taken if living? (b) Do the issue of a dying child of testator, who succeed to the income formerly payable to such dying child, and whether such taker so succeeding be literally a child or a later descendant of such dying child, take a vested interest in such income until the expiration of the trust, so that such income thus acquired is subject to assignment by such new taker, or if not assigned would pass as part of the estate of such new taker payable to the legatee of such taker if bequeathed or to the distributee of such taker if not disposed of by Will"?

The immediate desire of the petitioners for a determination of these questions is to have settled the power *vel non* of the grandchildren now receiving income to dispose of their right to receive it by assignment or will. In other words, is that right vested, or is it for life only. The further question is whether, in case any of the remaining living children of the testator die leaving both children and the issue of deceased children, or no children and the issue of deceased children, do such issue

of deceased children take? The trustees are not now confronted with any of these questions and it is possible, although not probable, that they may never be. On the other hand, they may arise at any time. Under these circumstances the first question for our consideration is whether the petitioners have a right now to a declaratory decree.

The Uniform Declaratory Judgments Act, codified as Article 31A of the Annotated Code, was repealed and re-enacted by the Act of 1945, Chapter 724. The purpose of the changes made was to broaden the scope of the Act in the light of some previous decisions of this Court. There had always been in the Act (Sec. 4) provisions authorizing the trustee, legatee, next of kin or *cestui que* trust, to have a declaration of rights to determine any question arising in the determination of an estate or trust, including questions of construction of wills. This Court has acted under this section. *Hart v. Mercantile Trust Co.,* 180 Md. 218, 23 A. 2d 682. In the recent case of *Knox v. Stamper,* 186 Md. 238, 46 A. 2d 361, 364, the bill, brought to construe a will, was questioned because it was filed before, rather than after a sale. The question at issue was whether a particular property was liable for sale under a proper construction of the will. We saw no force in the suggestion that the bill was prematurely brought, and Judge Henderson, in the opinion, said, "Certainly such a bill might be brought on the theory of declaratory relief." The appellant finds in Section 6 of Article 31A, as amended, a statement that relief can be granted where an actual controversy exists of where antagonistic claims are present which would indicate imminent and inevitable litigation, or where a party asserts a status or right and there is a challenge or denial of such right by an adversary party who also asserts an interest, and the court is satisfied that a declaratory decree will terminate the uncertainty. He claims that these categories are exclusive and that the present case does not come within any of them. We are unable to agree with this conclusion. In the case

of *Caroline Street Permanent Building Association No. 1 v. Sohn*, 178 Md. 434, 13 A. 2d 616, the Court held that a judgment for declaratory relief was not intended to supersede subsisting rights of litigation, and that, unless there was an actual controversy, proceedings under the Act could not be sustained. The Act of 1945, Chapter 724, in its preamble, said in effect that the General Assembly thought that the existence of an immediate cause of action and another adequate remedy did not preclude judgment for declaratory relief, and that it was intended by the repeal and re-enactment to change the wording of the Act so that it should clearly and unmistakably express that intention. The new Section 6 is the means by which that intention was expressed. Of course the interpretation of an act is a judicial and not a legislative function. *Marburg v. Mercantile Bldg. Co.*, 154 Md. 438, 140 A. 836; *Humphreys v. Walls*, 169 Md. 292, 181 A. 735. Nevertheless, where the intention is clearly expressed, and the means used to carry out that intention seem adequate for the purpose, courts will endeavor to carry it out. We find in the case at bar that the grandchildren of the testator assert a status or right, and that the great-grandchildren, represented by their guardian *ad litem*, deny that right and assert an interest in the share of their father, not contingent on his death, but vested and subject to divestment only in the event they die before he does. These contentions bring the case within both the wording and the declared intention of the Act, and we think the remedy sought is applicable.

Appellant cites in support of his theory an opinion by Judge Gest in the Orphans' Court of Philadelphia County, affirmed by a *per curiam* order of the Supreme Court of Pennsylvania. *Straus' Estate*, 307 Pa. 454, 161 A. 547. In that case it was held, following a number of previous Pennsylvania decisions, that the Declaratory Judgments Act can only be invoked where a real controversy exists. A similar decision was made in the later case of *Quigley's Estate*, 329 Pa. 281, 198 A. 85. But these cases were decided in 1932 and 1938 respectively.

In 1943 an amendment was made to the Pennsylvania Declaratory Judgments Act very similar to Section 6 of the Maryland Act. The latter is said to be patterned after it. The new Pennsylvania statute, P. L. 645, May 26, 1943, Purdon's Pa. Stat. Annot, Title 12, Sec. 836, was drafted by Chief Justice Von Moschzisker of the Pennsylvania Supreme Court (after his retirement) to rescue the Pennsylvania Act from a line of decisions which had, in effect, emasculated it by judicial legislation. *Borchard, Pennsylvania Clarifying Amendment for Declaratory Judgments,* 93 Un. of Pa. L. Rev. 50, Md. L. Rev., Vol. VIII, No. 3, pp. 239, 240. In view of these facts the Straus and Quigley cases, as well as the previous Pennsylvania decisions have no more weight than the previous decisions of this Court before the passage of the Act of 1945, Chap. 724. Both the Pennsylvania and the Maryland cases were based upon statutes now repealed for the express purpose of changing the law as construed by those decisions.

The question then is what does the second clause of the tenth paragraph mean. Both it and the first clause refer to the death of one of the testator's children, each based upon a condition as to issue. The first clause is where a child should die "without leaving issue him or her surviving." The second clause covers the case of a child dying "leaving issue him or her surviving." Neither clause is contingent upon the survivorship *vel non* of a child of the dying child of the testator. The second clause provides that if there are issue surviving, the income "shall go to and become the property of his or her child, if only one, or children, if more than one, equally share and share alike." If that wording is interpreted literally without reference to the rest of the clause, it might be held that a class is created of children of the testator and only those children would take who survive the father or mother. However, this interpretation is open to two objections. The first is that the clause does not say that the child or children must survive, but only that it takes effect if issue survive. The second objection is that un-

der that construction it would be quite possible for one of the testator's children to die leaving issue surviving him, but that issue might consist of grandchildren only. If the grandchildren could not take in the place of their parents, then there would be an intestacy. If there are two possible constructions of the wording of a will, one of which might produce an intestacy and the other does not, courts will invariably adopt the one which bars the possibility of intestacy. *Hammond v. Piper,* 185 Md. 314, 44 A. 2d 756. The testator in the will before us clearly intended to take care of all possible contingencies when each child died. He left no room for an intestacy. If a child died without issue, then his or her share of the income went to the other children of the testator surviving. If a child died with issue, in our opinion, the testator intended that his or her share of the income should go to that issue *per stirpes,* the children of the dying child being the *stirps.* It is unlikely that the testator would have made leaving issue surviving the condition without intending that such issue would take what was left. Our conclusion prevents any possibility of an intestacy as to any child's share of the income, and is a reasonable construction of the words of the will.

This interpretation is reached with full awareness of the general rule that "child" usually means immediate offspring such as sons and daughters. However, there is engrafted upon this rule "the equally recognized and settled exception that, if there is an intention clearly gathered from the language of the instrument that the word 'children' should include grandchildren, then grandchildren will be included." *Billingsley v. Bradley,* 166 Md. 412, 171 A. 351, 357, 104 A. L. R. 274.

The other question is what estate in or title to the income passes to the descendants of a dying child leaving issue. The appellant contends that such income continues its descent from time to time under the testator's will, so that if the father of the two children, for whom appellant is guardian *ad litem,* should die, his share would then go to them during the continuance of the trust. But the

difficulty with this construction is that not only does the testator say that the income of the child dying shall "go to and become the property of" his descendants, but he makes no provision whatever for any further devolution. The gift is absolute, although the words "during the continuance of the trust" must be assumed, because it is only during the continuance of the trust that the income is payable. The testator took care of his children, and those who would be entitled as their descendants at the times of their respective deaths, but he did not seek to go further. He made no provision for his great grandchildren or great great grandchildren, unless they were those entitled to take at the death of his children. It may readily be conceived that he thought he had gone far enough. In the absence of any words saying that the takers after the death of his children would have only life estates, we must concluded that his intention was to give them absolute estates in the income which they could do with as they pleased. Life estates have sometimes been enlarged by the courts, but we are aware of no case in which an estate absolute by the terms of the gift has been whittled down by judicial construction to become only a life estate.

The fact that, by this interpretation, certain persons may receive the income, and different persons may take the corpus from which that income is derived at the termination of the trust, is no bar to its correctness. Testators frequently make different provisions for income and for corpus, and it is entirely within their power to do so. The testator has clearly done so in this case, because the whole *corpus* is to be divided among his issue *per stirpes,* and the descendants of his children who are getting the income from 60 shares will not get the *corpus* producing such income, but their *corpus* will be reduced to an equality with the descendants of those children who are only getting the income from 29 shares. If the father of the two minors represented by the appellant should assign his income or should die willing it to someone else, his assignee or legatee would be entitled to take such in-

come during the continuance of the trust. But when the trust ends, if the two minors are living and he is dead, they will get the *corpus,* and whoever was getting the income will, of course, cease to have it. We see no incongruity in this situation, and we think it is what the testator intended by his will, which is the test.

As we find no error in the decree appealed from it will be affirmed.

*Decree affirmed, costs to be paid out of the estate.*