CROUCH ET AL. *v.* MERCANTILE-SAFE DEPOSIT
AND TRUST COMPANY, SUBSTITUTED
TRUSTEE, ET AL.

[No. 213, September Term, 1958.]

*Decided June 4, 1959.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*J. Britain Winter,* with whom were *Albert R. Bowen, Jr.,* and *Winter & Bowen* on the brief, for appellants.

*Arthur W. Machen, Jr.,* with whom were *Russell R. Reno, Jr.,* and *Venable, Baetjer & Howard* on the brief for Mercantile-Safe Deposit and Trust Company, Substituted Trustee under the will of Samuel Winter, deceased, appellee.

*J. Cookman Boyd, Jr.,* for Mercantile-Safe Deposit and

Trust Company and Mildred W. Hart, Executors of the estate of W. Melbourne Hart, deceased, appellees.

BRUNE, C. J., delivered the opinion of the Court.

This case calls for a construction of the will of one Samuel Winter, who died in 1892. The aid of a court of equity in construing the will was first sought in December, 1893, and the first decree construing it was entered in 1894. The present proceeding was instituted in December, 1957, by the present trustee under the will for the determination of the proper disposition of the one-sixth share of the income from the trust estate under the will which had been payable to a great-grandson of the testator, the late W. Melbourne Hart, up to the time of his death in 1957. The chief question is whether Mr. Hart had a vested estate in the income which he could dispose of by his will or whether his interest in the income ceased upon his death and passed to his six first cousins who are grandchildren of the late William P. Winter, the son of the testator. The Circuit Court held that Mr. Hart did have a vested interest in the income which he could transmit. It thus upheld the contention of the executors of Mr. Hart's estate and the view of the trustee under Mr. Winter's will, who, together, are the appellees. The appellants, W. Edwin Crouch and Henry L. Winter, are two of the first cousins of the late Mr. Hart and they are also first cousins of each other.

The first two Items of the will of Samuel Winter made certain bequests and a devise to his wife, Sarah A. Winter. By Item 3 the testator established a trust of the residue of his estate and undertook to direct the disposition of the income therefrom. By Item 4 he provided for the distribution of the principal of the trust estate, and by Item 5 he appointed executors and revoked prior testamentary dispositions.

We are here concerned primarily with Item 3 and the provisions thereby made for the children and descendants of the testator. (The widow renounced the will. Hence there is no need to discuss an annuity to her contained in this Item.) After providing that the trustees should hold the trust estate for twenty-one years or during the life of the testator's wife and of his children living at the time of his death, and of the last

survivor of them, Item 3 continues: "And if at the death of my last surviving child, any child or descendants of any of my said children be living under the age of twenty one years, then to have and to hold the said property and Estate to the said Trustees further until the said Minor child or descendants and all of them if there be more than one shall attain the age of twenty one years or until such minor descendants shall die, whichever first occur * * *."

With regard to income payable to the testator's children and descendants Item 3 provides that the trust estate shall be divided into two parts, the income from one to be paid to the son, William P. Winter, and from the other to the daughter, Sarah A. Winter, to her sole and separate use, subject as to each to a spendthrift trust clause. Then follow the provisions which give rise to the present controversy. They read as follows: "And from and after the death of either of my said Children respectively — Then in Trust and confidence to pay over one part or share of said net income to the Child or Children and descendants of such of my deceased Child per Stirpes and not per Capita until all my descendants living at the time of the death of the last Surviving of my Children shall if minors attain the age of twenty one years or die whichever first occur * * *."

This was followed by a clause which the Circuit Court in 1894 regarded as so incomplete as to indicate a clerical error resulting in an omission. This the Court proceeded to supply by construing the clause in question so as to read in provisions for cross-remainders in certain events. The Court also, in effect, read out the original twenty-one year limitation on the duration of the trust. Neither of these emendations is involved in the present case.

Item 4 provides for the distribution of principal as follows: "At the death of the last survivor of my children Provided none of the children or descendants of any of my said children be then living under the age of twenty one years, but if any child or descendant of any of my said children be living at the death of the last survivor of my children and under the age of twenty one years, then upon the death or majority whichever shall first occur of all such minors, it is my Will that the Trust here-

inbefore mentioned shall cease and determine and thereupon I do hereby devise and direct that all of Estate and property real personal and mixed shall be divided equally among all my descendants then living per stirpes and not per capita to them their heirs personal representatives and assigns Absolutely."

The testator was survived by the two children mentioned in his will. His daughter, now Mrs. Eccleston, is still living. His son, William P. Winter, died in 1903. He was survived by one son, Henry N. Winter, and by two daughters, Mrs. Louisa Amelia Crouch, and Mrs. Willa Coriel Hart. Henry N. Winter died in 1908, intestate, and was survived by his wife (now deceased) and by five children (great-grandchildren of the testator). Mrs. Crouch and Mrs. Hart both died in 1938. Each was survived by a son (a great-grandchild of the testator). Mrs. Hart's son died in March, 1957, testate, but without issue. From the time of the death of his mother to the time of his death he received the income from one-third of the William P. Winter half of the trust estate, or one-sixth of the entire income from the estate. The disposition of that share of the income for the balance of the term of the trust is now at issue. Since Mrs. Eccleston is still living, and since there are also other living and younger descendants of the testator, it seems quite possible that the trust may continue for an additional period in excess of twenty-one years.

The decree of the Circuit Court entered in 1894 construing the will of Samuel Winter held that the terms of the trust did not violate the rule against perpetuities and that the term "descendants" as used in Item 4 referred to all direct descendants of the testator in whatever degree. The decree also stated that the court was of the opinion that the same word "descendants" as used in Item 3 "primarily means children of Testator's children—it being the intention of the Testator to invest [sic] in his grandchildren the equitable remainder liable to be divested pro tanto to let in grandchildren or descendants of deceased grandchildren per stirpes born between the death of Testator and that of Testator's grandchildren." The Judge of the Circuit Court in the present proceedings instituted in 1957 reached a like conclusion both as a matter of his own interpretation of the will and on the basis of the 1894 decree being *res judicata*.

No contention to the contrary as to *res judicata* appears to have been made in the trial court, but the appellants' counsel in this Court (who did not represent them in the trial court) here contend that the 1894 decree is not binding as to them. Both of the appellees, the trustee and the executors of W. Melbourne Hart, agree that the point appears clearly on the record and that since the interests of the appellants were not represented in the 1894 proceedings, the doctrine of *res judicata* is not applicable against the appellants. Cf. *Hans v. Safe Deposit & Trust Co.,* 178 Md. 52, 64-65, 12 A. 2d 208, where a then objecting party had been a party to an earlier equity proceeding adjudicating the ownership of shares in a trust estate. He had there failed to raise the question which he sought to raise later and was held bound by the prior proceedings.

We may also note, as did the trial court, that the present proceedings raise the question now at issue for the first time in truly adversary proceedings. This observation is pertinent both to the above question and to the contention of the appellants that the practical construction of the will by parties in interest, extending over many years, has been against the grandchildren of the testator having vested interests in the income. That contention is based upon the fact that following the death of Henry N. Winter in 1908 and following the deaths of Mrs. Crouch and Mrs. Hart in 1938, their interests in the income were treated as passing to their respective children. In each of these instances the present contention could have been raised but was not. As to Henry N. Winter's share, the income formerly payable to him was ordered, on the petition of his widow and without contest, to be paid to his children. Since Henry N. Winter died intestate, his widow was the only person who would have had an interest adverse to that of the children. In the case of Mrs. Crouch and Mrs. Hart, each of whom died widowed and intestate, leaving a surviving child, the child would have been entitled to take in any event—whether under the will or under the intestate laws. Also, as the appellants agree, the practical construction of the will by some of the parties in interest is of no binding effect. See *Walker v. Safe Deposit & Trust Co.,* 192 Md. 695, 704, 65 A. 2d 311; *Bradford v. Mackenzie,* 131 Md. 330, 339, 101 A. 774; Miller, *Construc-*

*tion of Wills*, § 8, p. 38. As Miller states, it may, however, be taken into consideration. Cf. *Marshall v. Security Storage & Trust Co.*, 155 Md. 649, 142 A. 186, where an alleged estoppel by agreement was held not to extend beyond the terms of the agreement.

We now return to the main question, which might be stated in several ways. At this point, it will probably aid in seeking the solution to this case first to restate briefly the terms of the gift of income and then to state the question in similar terms. The gift of income (after the renounced annuity to the widow) is one-half to each of the testator's children for their respective lives, subject to a spendthrift trust, and from and after the death of either child to his or her child or children and descendants of such deceased child *per stirpes* and not *per capita*, until all of the testator's descendants living at the time of the death of the last surviving of his children shall have reached the age of twenty-one years or shall have died. Did this constitute a gift of the income to the children of the testator's son, William, who might be living at the time of the son's death, with a substitutional gift to the then living descendants, *per stirpes*, of any child of the son's who might have predeceased the son; or did it constitute a succession of gifts to the descendants of the son, *per stirpes*, who might be living from time to time during the continuation of the trust?

It may be supposed that the testator did not foresee the course which events have taken—that his daughter would outlive one of his great-grandsons and that his trust might continue for perhaps twenty years or more after the death of a great-grandson. We may suppose that if he had foreseen such a situation, he might have expressed himself more clearly as to his wishes in the present circumstances; but such suppositions afford little help in trying to decipher his intentions from his words.

On the one hand, there seems to be no particular reason why he should have wished the beneficial enjoyment of his trust estate to be in others than his own descendants during the duration of the trust, just as he plainly wished it to be upon the termination of the trust. On the other hand, and also plainly, it would have been quite as easy to have said "descendants liv-

ing from time to time" in describing those entitled to receive income under Item 3 as it was to say "descendants then living" —referring to the time of termination of the trust—in describing those entitled to receive principal under Item 4. If he had used substantially the same terminology in Items 3 and 4, presumably he would have meant the same thing in each place (*Marshall v. Safe Deposit & Trust Co.*, 101 Md. 1, 8-9, 60 A. 476) ; but the fact that he did not use the same or equivalent phrases militates against the construction that he meant the same thing in each instance.

It is a firmly established rule of construction that the law favors the early vesting of estates. Miller, *op. cit.*, § 226. This rule is applicable to gifts of income. *Waters v. Waters*, 24 Md. 430; *Ryan v. Herbert*, 186 Md. 453, 47 A. 2d 360; *Walker v. Safe Deposit & Trust Co., supra.* There are some differences between these cases and the instant case; but in each of them a gift of income was held to be vested and to be subject to disposition by a beneficiary in whom the right had vested, except to the extent that the right of disposition might have been limited by a spendthrift trust provision, as in the *Walker* case.

In *Waters v. Waters, supra,* the testator gave the surplus income from a trust fund to be equally divided annually between all of his children who might be of the age of twenty-one years or who might be married. One of the testator's sons died testate (after the death of the testator) leaving a widow and four children surviving him. The controversy was between other children of the testator who had reached their majority or had married and the executrix of the estate of the above mentioned decedent. There was a similar question as to the share of another son. This Court pointed out that the income in dispute constituted the surplus or residue of an annually accruing fund held for annual distribution. It was said (24 Md. 444) : "There can be no doubt that in the case of a residue of personalty, or in the case of an annuity during the life of another, the legacy would vest and survive to the personal representative in the event of the death of the legatee before the time of payment, unless a different intention was expressed or conveyed by the will. * * * The rules of construction favoring

the vesting of estates, and to prevent intestacy in the case of residuary bequests, would apply in those cases according to all the authorities. And the court cannot perceive why the same rules should not govern the construction in this case."

The express provision for annual distributions was, we think, a stronger indication of an intention to make gifts to children living from time to time than are the provisions of the will now before us, and the *Waters* case is consequently a strong authority in support of the contentions of the appellees.

Their contentions are also supported by the *Ryan* and *Walker* cases above cited. In each of those cases it was held that an income beneficiary had a transmissible interest, notwithstanding the fact that such a holding made it possible that an interest in the income might be transferred to someone other than a lineal descendant of the testator or a blood relative of the settlor.

In the *Ryan* case, because the testator manifested an intention to benefit surviving "issue," and because a partial intestacy might otherwise have resulted, the term "child or children" was given a broader meaning than its literal meaning and was construed as including descendants more remote than children. It was thus substantially equated with the terms used by Mr. Winter, but the interest of a first taker of income was held to be vested and transmissible.

In the *Walker* case the settlor provided that (in the circumstances which occurred) income from a trust estate should be paid to his "brothers and sister, equally, and to the survivors or survivor of them, if any of them die without issue, but if any of them die leaving issue * * * surviving, then in the distribution and payment of said income, such issue shall stand in the place of the parent, and receive the share of said income which the parent of such issue would have taken hereunder if living * * *." The trust was to continue until the death of the last survivor of the settlor's brothers and sister, and thereafter until the youngest child of any of them living at the death of such survivor should attain the age of twenty-one years. The principal was then to be distributed equally *per capita* among the then living children of the brothers and sister of the settlor, the descendants of any then deceased child of any of

those persons to take the share to which such deceased child would have been entitled. Spendthrift trust provisions applied to all beneficiaries. The settlor's sister died, leaving one son surviving. Upon his death, married but without children, the question arose as to whether his interest in the income was absolute for the balance of the term of the trust or whether it passed by survivorship to his one surviving uncle. It was held that the decedent's interest was absolute. In rejecting the claim of the uncle, Judge Henderson, for this Court, pointed out that under the reasoning of the *Ryan* case, a gift over to the uncle could not be implied and that the nephew took a devisable or descendable interest in the income which was not contingent upon his survival until the termination of the trust. He further pointed out that even upon the theory advanced by the uncle, the interest of the nephew would have vested upon the death of his mother, subject to divestiture upon his death with issue, but that this event did not occur.

Along much the same line of reasoning as the second holding in the *Walker* case are the views stated by Professor Sparks of the New York University School of Law, in an article entitled "A Decade of Transition in Future Interests," 45 Va. L. Rev. 339, at pp. 343-344. The author there says in part: "Although courts usually avoid implying provisions in wills and deeds, much litigation in recent years has concerned efforts to bring about that result. * * * The presence of one condition, whether precedent or subsequent, is not sufficient reason for implying another. A provision for divestment of a remainder upon death of the remainderman leaving descendants prior to the date of distribution does not justify divestment if the remainderman dies without descendants, nor does a provision for divestment of income to a remainderman divest his corpus."

The reasoning of the *Ryan* and *Walker* cases seems applicable in the present case to support the contentions of the appellees.

The case which seems perhaps to come closest, among the cases which were cited to us or which we have found, to supporting the contentions of the appellants as to the construction of Mr. Winter's will, is *Ledwith v. Hurst*, 284 Pa. 94,

130 A. 315. In referring to that case, Simes & Smith, *Future Interests*, 2nd Ed. § 738, entitled "Meaning of Issue," says: "In one instance a court of last resort construed 'issue' to mean a succession of life estates to the heirs of the body for the time being. Needless to say, this last construction has little support either on a basis of reason or authority." In an article by Merrill I. Schnebly, entitled "Testamentary Gifts to 'Issue'," 35 Yale Law Journal 571, at 584, that case is also adversely criticized.

In *Gent v. Kelbaugh*, 179 Md. 343, 18 A. 2d 595, the testator created a trust under which income was to be paid, first, to each of his sisters, A, B, C, D and E, who might be living during the life of A; second, upon the death of A, the entire income was to be paid to her daughter, F (a niece of the testator) for life; third, upon the death of F to any of the testatrix' sisters who might be living at F's death "as long as any of them shall live." Upon the death of the last survivor of F and the five sisters, the corpus was to be paid over to the then living children and descendants of the five sisters. All five of the sisters survived the testatrix, and so did niece F. Sister B died in 1934, niece F in 1935 and sister C in 1937. It was held that the income was payable after the death of B and after the deaths of F and C to the surviving sisters in equal shares and that no interest therein passed to the personal representatives of the deceased sisters, B and C. In reaching this conclusion, the court found that the testatrix had manifested an intention that the surviving sisters should take. Such an intention was deduced largely from the provisions under which the original right of surviving sisters to share in income was conditioned upon survivorship and their right to share if A and F both predeceased any of the others was likewise conditioned upon survivorship. The result was also based in part upon the absence of a gift over upon the death of any of them. The *Ryan* and *Walker* cases, which are more recent, take a contrary view as to the absence of a gift over. On the ultimate question as to whether or not the testator in the instant case manifested an intention to make successive gifts of income to surviving descendants who might be living from time to time, we think that the language of the will in *Gent v. Kelbaugh* was considerably

stronger than that of the Winter will to manifest such an intent and that the latter is closer to the language of the *Waters, Ryan* and *Walker* cases. We also note the absence of any clear provisions for cross-remainders between descendants of either one of the testator's children. (The Circuit Court, by construction in 1894, supplied cross-remainders as between descendants of the two different lines, but did not do so within either line.)

In the instant case the gifts of income to the children of William P. Winter (grandchildren of the testator, Samuel Winter) all took effect in possession or enjoyment upon the death of William. Since all of William's children survived him, there was no occasion for a substitutional gift to the descendants, *per stirpes,* of any of his children to take effect at that time. It is possible that Mr. Winter, if he had given the matter careful consideration, might have wished to create a succession of life estates, on a *per stirpes* basis, in the descendants of his son living from time to time. If that was his intention he failed to make it clear. In the words which he did employ, we find no sufficient basis to warrant departure from the rule that the law favors the early vesting of estates or to indicate that the testator intended a succession of gifts. It happens that all three of the children of William P. Winter were living at the time of the death of the testator. Consequently, all members of the class to whom he gave an interest in the income from one-half of the trust estate acquired vested interests therein at the time of the testator's death. These interests were subject to be divested *pro tanto* by the birth of an additional child or children of William P. Winter, but no additional child was born. The interest of each of these grandchildren was also subject to being divested entirely by the death of such grandchild during the life of William P. Winter, leaving issue surviving the said William P. Winter, in which event such issue surviving William P. Winter would have taken as substituted legatees in the place of the deceased child. However, none of the children of William P. Winter predeceased him. At his death the class closed and no substitutional gift to issue took effect at that time. We find no clear gift over of income, express or implied, either by way of substitution or otherwise, to take effect at any later

time. Hence the gift of income to the testator's grandchild, Willa Coriel Hart, became vested in her, and there was nothing in the will of Samuel Winter to divest it. Upon her death, intestate, it passed to her only child W. Melbourne Hart, Jr., and now constitutes a part of his estate.

The decree of the Circuit Court will accordingly be affirmed.

*Decree affirmed, with costs.*