EDGAR M. LUCAS ET AL. *v.* MERCANTILE-SAFE
DEPOSIT AND TRUST COMPANY ET AL.

[No. 397, September Term, 1975.]

*Decided January 5, 1976.*

The cause was argued before MOORE, LOWE and MELVIN,
JJ.

*William A. Snyder, Jr.*, and *Donald C. Greenman*, with whom were *Ober, Grimes & Shriver* on the brief, for appellants.

*Paul E. Burke, Jr.*, with whom were *W. Gibbs McKenney* and *McKenney, Thomsen & Burke* on the brief, for appellees Mabel M. Cromer, Eleanor Hale, Mildred A. Hagberg, Nathaniel Ward and Dorothy Klinefelter. *George Barrett Johns*, with whom were *Martin J. Smith* and *Smith, Johns & Smith* on the brief, for appellee Marjorie Yellott. Submitted on brief by *William G. Christoforo* and *Kenneth Holniker* for other appellees.

LOWE, J., delivered the opinion of the Court.

The appeal before us raises the question of when a controversy exists that is sufficiently justiciable to compel declaratory relief. *Patuxent Co. v. Commissioners*, 212 Md. 543, 548-549; and see *Pr. George's Co. v. Bd. of Trustees*, 269 Md. 9, 12. Appellant Edgar M. Lucas is the income beneficiary of two trusts valued well in excess of $2,000,000, created by his father and uncle in 1932. These trusts provide that upon Lucas's death, the trust income will be payable to his "child, children and issue of deceased children" for twenty-one years. At the end of that period, or if there should be no living descendant of Lucas prior to the end of the twenty-one years, the trusts terminate and the principal is distributable to and among Lucas's descendants living at that time. Should there be no living descendants of Lucas, either at his death or at the termination of the trusts, the trusts provide for the distribution of the principal among Lucas's "heirs and next of kin."

The original petition for declaratory relief was filed by Lucas in August of 1970 under the Maryland Uniform Declaratory Judgment Act then found in Md. Code, Art. 31A.[1] After reciting the fact that he was unmarried and

---

1. In 1973, that Act was recodified and now appears as Cts. Art., §§ 3-401 through 3-415.

without child, Lucas asked the court to determine whether or not an adopted child would fall within the term "child" as used in the trust instruments entitling such adopted child to the income therefrom after Lucas's death. Lucas had become attached to his golf caddy whom he desired succeed him as income beneficiary and ultimately inherit the corpus of the two trusts. He explained:

> "If by its decree this Honorable Court determines that the terms 'child', 'children', etc., as used in the two trust indentures do include any lawfully adopted child or children of your petitioner, your petitioner intends promptly upon the entry of such a decree to file a petition for the adoption of Mr. Dale K. Stammer, a resident of Baltimore City, born May 26, 1950."

The following December, Dale K. Stammer petitioned to be made a party plaintiff, reciting the fact that Lucas had instituted adoption proceedings to which he had filed a consent. His petition was granted seven days before the chancellor heard testimony from Mr. Lucas and argument of counsel.

On October 21st of the following year, 1971, the chancellor rendered a lengthy opinion. After reciting the factual context of the case, he noted that Dale K. Stammer had been adopted by Lucas and, together with Lucas, was before the court asking for an interpretation of the trusts. Before deciding the initial question raised in answer to the petition by some of the potential heirs, i.e., whether there was a justiciable issue or controversy suitable for declaratory relief, the chancellor pointed out that:

> "No issue has been raised or threatened with respect to the right of Edgar M. Lucas to continue to receive the income of both trusts during his lifetime."

However, he then went on to hold that:

> ". . . this Court is persuaded to exercise its

discretion by granting a declaration of the rights under the 1932 trusts."

For reasons which he explained at length, the chancellor declared:

". . . that the terms 'child,' 'children,' 'issue' or 'descendants' of Edgar M. Lucas as used in the two irrevocable trust instruments now before the Court, do *not* include any person or persons adopted by Edgar M. Lucas, or the child or descendant of such adopted person. In the event that there is no natural child or descendant of Edgar M. Lucas living at the time of his death, the heirs and next of kin of Edgar M. Lucas as determined under the intestate laws of Maryland in effect on March 23, 1932 shall take the remainders of the trust."

On September 18, 1972, the petitioners (Edgar M. Lucas and his adopted son Dale) filed a "Petition for Leave to Re-Open Argument and for Additional Declaratory Relief." Pointing out that no final decree had been signed, the petitioners set forth the alternate claim that even if Dale was not child, issue or descendant as opined by the court, he was within the class of alternate remainderman described as "heirs and next-of-kin."

On April 19, 1973, the court granted the petition to reargue and on December 21, 1973 issued an order denying any declaratory relief stating:

"That the relief sought by the plaintiffs, Dale Kirk Lucas and Edgar M. Lucas be and the same is hereby denied, as this Court is of the opinion that a decree at this time will not serve a useful purpose or terminate controversy. The presentation of new arguments at the time of the re-argument of this case convinces this Court that this entire matter is merely an attempt to use the Court for purposes of giving legal advice. It occurs to this Court that each time a novel legal theory occurs to counsel that they will again ask the advice of the Court and will

attempt to ask the Court to determine future rights prior to the time of the death of Edgar M. Lucas.

This Court has carefully considered the problem and has made a determination as set forth in its Memorandum Opinion; however, this Court does not consider it to be binding as the problem should be presented to a court of competent jurisdiction at the time of the happening of the contingencies if, in fact, they ever occur. Perhaps in the future a Court will agree with the conclusions expressed by this Court in its Memorandum Opinion, or it could well be that some Court will at that time reach a contrary conclusion. In any event this Court believes the action to be premature and for this reason it shall be dismissed.

All Court costs are to be paid by the plaintiffs.

This Court does hereby expressly reserve consideration of the questions pertaining to the entitlement to and payment of counsel fees and expenses of the respective attorneys out of the income and/or principal of said trusts."

Appellants now ask that we reverse that order, permit them declaratory relief, and decide the substantive question in their favor. Appellees would have us affirm the court's refusal to declare or, in the alternative, reinstitute the declaration made but not signed by the chancellor below. These appellees consist of prospective alternative remaindermen who did not choose to permit a decree pro confesso to be entered against them (as have some), and a representative for unborn children within that class. Such of the known alternative remaindermen who elected to fight, did so at every turn and with every legal weapon at their disposal. It should be noted, however, that in the face of allegations that possible unknown and unnotified heirs existed, no assurance could be made to the contrary.

### The Statute

At the time this suit was instituted, Md. Code, Art. 31A, §

2 permitted any party of interest to obtain a declaration of his rights, status or other legal relations "under a deed, will, written contract or other writings constituting a contract. . . ." [2] Having provided in § 1 of that Article the jurisdiction of the court to entertain such cases, the statute then provided that the exercise of that jurisdiction was within the court's discretion and placed limitations on the type of case appropriate for such relief. § 6.

Because the Court of Appeals had held that declaratory relief was not appropriate under the Act when an immediate cause of action existed between the parties for which a legal or equitable remedy was available, in 1945 the legislature clarified the language of the Act to assure that relief would not be denied solely because another remedy might be available. In short, the 1945 Act of the General Assembly legislatively reversed decisions holding declaratory relief unavailable in such situations, *Baltimore v. Seabolt*, 210 Md. 199, 205; however, some discretion to refuse such relief was left to the courts even after the 1945 Act (Chap. 724). *Seabolt*, 210 Md. at 210.

By process of accession, beginning with an apparent concession of counsel in *Staley v. Safe Deposit & Trust Co.*, 189 Md. 447, 456-457, the proposition "that courts have some judicial discretion to refuse a declaratory judgment when it does not serve a useful purpose or terminate controversy," grew to acceptance as a rule of law. *Cambridge v. Eastern, Etc., Co.*, 192 Md. 333, 341; and see *Grimm v. Co. Comm'rs of Wash. Co.*, 252 Md. 626, 632. In light of the statutory caption

---

**2.** The recodification effective January 1, 1974, appearing in Cts. Art., § 3-406 added "trusts" to the list of documents about which a proper party might seek declaratory relief. However, since Md. Code, Art. 31A, § 4 (now Cts. Art., § 3-408) permitted declaratory judgment jurisdiction in trust matters, we are not called upon to decide the significance of the omission in the old § 2.

Md. Code, Art. 31A, § 4 said in pertinent part:

"Any person interested . . . through [a] . . . trustee . . . in the administration of a trust . . . may have a declaration of rights
. . . .

(c) To determine any question arising in the administration of the . . . trust including questions of construction of wills and other writings."

of § 6 of former Art. 31A, (as well as the recodified version in Cts. Art., § 3-409) of "Discretionary Relief" and the permissive language in that section, the slow process of judicial accretion was hardly necessary. While recognizing the relief to be of a discretionary nature, the current version of the Act limits that exercise of discretion by providing in Cts. Art., § 3-409, certain qualifying prerequisites to a court's grant of declaratory relief:

"§ 3-409. Discretionary relief.

(a) *In general.* — Except as provided in subsection (d), a court may grant a declaratory judgment or decree in a civil case, if it will serve to terminate the uncertainty or controversy giving rise to the proceeding, and if:

(1) An actual controversy exists between contending parties;

(2) Antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation; or

(3) A party asserts a legal relation, status, right, or privilege and this is challenged or denied by an adversary party, who also has or asserts a concrete interest in it."

### The Case Law

Appellants rely on *Ryan v. Herbert*, 186 Md. 453 which was the precursor of a number of controversies arising over the trust created by Arthur Nattans, the founder of Read Drug and Chemical Company.

That case, which is

". . . concerned entirely with income and has nothing to do with the final disposition of the corpus of the trust estate. . . ." *Id.* at 456,

does not appear to be apposite to the issue at bar. The Court in *Ryan* framed the issue as "whether the petitioners have a

*right* now to a declaratory decree." (Emphasis added) *Id.* at 458. In that case, as in this one,

> "[t]he *trustees* are not now confronted with any of these questions and it is possible, although not probable, that they may never be." (Emphasis added) *Id.* at 458.

We note the significant difference in the preliminary question met there and that which is presented here. The question on appeal was whether the petitioners had provided the minimum requirements giving them a "right" to declaratory relief. The "right" to which the Court alluded was the right of the petitioners to have the chancellor hear their case under the Act. Appellants would have us believe that the meeting of those minimum requirements gave them a right to relief as opposed to giving the chancellor the discretion to grant or withhold relief.

In this case, the right of the chancellor to render a declaratory judgment was not the issue. The reason that the petition for declaratory relief was denied by him was not that he felt he lacked the power to grant it. Rather, as he stated, it was an exercise of his discretion that denied them relief. Therefore, it becomes appellants' burden to show us that such denial was unjustified and an abuse of discretion. This they have failed to do and *Ryan v. Herbert* provides them no succor.

In *Ryan v. Herbert,* the Court recognized that while the "trustees" are not confronted with an immediate concern, the income beneficiaries (who also were petitioners) were.

> "The immediate desire of the petitioners for a determination of these questions is to have settled the power *vel non* of the grandchildren now receiving income to dispose of their right to receive it by assignment or will. In other words, is that right vested, or is it for life only. The further question is whether, in case any of the remaining living children of the testator die leaving both children and the issue of deceased children, or no

children and the issue of deceased children, do such issue of deceased children take? The trustees are not now confronted with any of these questions and it is possible, although not probable, that they may never be. On the other hand, they may arise at any time. Under these circumstances the first question for our consideration is whether the petitioners have a right now to a declaratory decree." *Ryan v. Herbert,* 186 Md. at 457-458.

In the case at bar the necessity for relief expressed in Mr. Lucas's original petition was to enable him to decide whether he should adopt Dale Stammers. Even if we assume that reason to have been adequate (which we decline to do for want of necessity), he did in fact adopt him without awaiting the result of his petition. Thus, such weight as that reason might have carried has been nullified. Moreover, Edgar Lucas repeatedly testified that the grant or denial of the relief prayed would in no way affect his own estate plans (which estate exceeded the value of both trusts). Nor is anything related to his will or other property dispositions contingent upon the result of the declaratory action. Furthermore, counsel agree and the chancellor expressly stated in his first opinion that no issue was "raised or threatened" with respect to the right of Edgar Lucas to continue to receive the trust income.

The sole reason espoused by Mr. Lucas for his desire to receive the declaratory determination was simply that he didn't want to leave Dale in a state of uncertainty and "with a lawsuit later on, at such time as [Lucas is] out of the picture." We agree with the chancellor that what was sought here was an advisory opinion rather than the relief contemplated by the Uniform Declaratory Judgment Act.

*Staley v. Safe Deposit & Trust Co.,* 189 Md. 447, is not only apposite to the legal question before us, it is strikingly similar factually. Although seeking an interpretation of Illinois rather than Maryland law, the determination sought by petitioners was whether the term "children" included an *adopted child* of a life tenant and his wife. The *Staley* Court

denied relief because it appeared that the proceeding was really designed to obtain for the life tenant (whose rights under the trust agreement were not in doubt) legal advice for the purpose of disposing of his own individual property. The *Staley* Court held that, even if the power to entertain the action existed in the court, a declaratory decree would be a misuse of judicial power and discretion. *Id.* at 460. In the course of its reasoning, the Court said:

> "Assuming for the sake of argument that the Maryland courts can exercise jurisdiction in the instant case, should they do so? Counsel apparently concede, at any rate it is generally held, that courts have some judicial discretion to refuse a declaratory judgment when it does not serve a useful purpose or terminate controversy. *Borchard, supra, [Declaratory Judgments,* 2d ed.] Chapter V, pp. 293, 312-314. Referring to criticism of the exercise of such discretion by federal courts, *Borchard* says the courts are right and the critics wrong. *Supra,* 312. 'It seems to us that the existence in the court of discretion of this kind is essential to the successful use of declaratory procedure. Without it the court and the public would have no really effective protection against the presentation of moot cases or of cases involving only remote contingencies, attempts to use the courts for purposes of giving legal advice or for answering questions as to which no reasonable doubt could exist, and the fomenting of unnecessary litigation. In *Gray v. Spyer,* [1922] 2 Ch. 22, at page 27, Lord Sterndale, speaking of declaratory judgments in a court which has had long experience with them, says, 'Properly used, they are very useful; improperly used, they almost amount to a nuisance.' " *National Shawmut Bank of Boston v. Morey,* 320 Mass. 492, 497, 498, 70 N.E.2d 316.
>
> *Borchard* says the tendency in the United States is to follow the English courts in giving to the

declaratory judgment the widest scope. On the question of parties, though the English courts are not restricted by constitutional or practical limitations arising out of the existence of forty-eight semi-sovereign states, their practice is not to decide as to future rights under wills or similar instruments except within limits. 'But where all the parties who in any event will be entitled to the property are of age and are ready to argue the case, the reason of the rule [not to decide as to future rights] departs, and it becomes a bare technicality. The reason of the rule is this, that the Court will not decide on future rights, because until the event happens it does not know who may be interested in arguing the question, and therefore may be shutting out parties who, when the event happens, may be entitled to succeed.' *Curtis v. Sheppard,* 21 Ch.D. 1, 4; *Jessel,* M. R. 'On the whole we may say that when the remainder is vested and not contingent, when the parties to be affected by the judgment are *in esse* of age, and represented before the court, the general rule is to make the declaration.' 'They [the courts] have refused to consider suits relating to rights which could vest only in the future, and for whose determination there is no immediate need.' *Borchard, supra,* 413, 703, citing American and English cases." *Staley v. Safe Deposit & Trust Co.,* 189 Md. at 456-458.

Surely the chancellor's *denial* of relief in the instant case was a proper exercise of discretion. There was no assurance that all interested parties were before the court, the adopted child may not survive Mr. Lucas, and it appeared that the income beneficiary was using the courts to create a power of appointment to which he had no right. Finally, the substantive determination of the issue in controversy depends primarily upon whether the trusts should be interpreted under the law as it was at time of the creation of the trusts or as that law has since been amended. If it were

determined that current law is controlling, the controversy would still not be at an end, for there is no guarantee that the legislature would not change the pertinent statute again before Lucas's death. Legislators are not bound by their predecessors' acts, which fact caused a New York Surrogate Court to comment that:

> ". . . no man's life, liberty or property is safe when the legislature is in session." L Tucker 247, 249 (New York Surr. 1866).

Beyond affirming the discretionary denial of relief by the chancellor, we conclude that the Lucases have not provided the court with a justiciable issue or controversy sufficient to have entitled them to a declaration had the chancellor followed his original course. In *Patuxent Co. v. Commissioners*, 212 Md. 543, 548, the Court of Appeals said that:

> "[a] concise definition of what constitutes a justiciable issue or controversy is given by *Anderson* in his *Actions for Declaratory Judgments*, Vol. 1, par. 17: 'A controversy is justiciable when there are interested parties asserting adverse claims upon a state of facts *which must have accrued* wherein a legal decision is sought or demanded.' See also *Tanner v. McKeldin*, 202 Md. 569, 576, 577, 97 A. 2d 449; *Kirkwood v. Provident Savings Bank*, 205 Md. 48, 53, 54, 106 A. 2d 103." (Emphasis added)

The factual foundation upon which appellants erect their claim for relief is speculative, and indeed such relief may never be necessary. The *Patuxent* Court summarized its conclusion in a manner befitting the conclusion of the case under consideration here:

> "This Court has decided: That the Courts will not decide abstract propositions, either under the Declaratory Judgments Act or any other procedure, *Davis v. State*, 183 Md. 385, 390, 37 A. 2d 880; that

the Declaratory Judgments Act should not be used in an attempt to use the Courts simply to give legal advice or for answering questions as to which no reasonable doubt could exist, *Staley v. Safe Dep. & Tr. Co.*, 189 Md. 447, 457, 56 A. 2d 144; and, when this jurisdiction is invoked, there must be an actual and justiciable controversy and the facts showing the same must be alleged, *Tanner v. McKeldin*, 202 Md. 569, 578, 97 A. 2d 449. We are unable to discover a proper justiciable controversy in relation to this prayer. Cf. *Gilbert v. Dayton* (Ohio App.), 59 N.E.2d 954, 957, 958." *Patuxent Co. v. Commissioners*, 212 Md. at 549. See also *Staley, supra.*

> *Judgment affirmed.*
> *Costs to be paid by appellants.*