691 A.2d 693

**Aurelia LOVEMAN, Guardian for the Estate of Joseph H. Loveman,**

v.

**CATONSVILLE NURSING HOME, INC., et al.**

**No. 243, Sept. Term, 1996.**

Court of Special Appeals of Maryland.

Nov. 4, 1996.

Reconsideration Denied Feb. 6, 1997.

Kurt J. Fischer (Marta D. Harting and Piper & Marbury L.L.P., on the brief), Baltimore, for Appellant.

Marc K. Cohen (Ober, Kaler, Grimes & Shriver, P.C., on the brief), Baltimore, for Appellees.

Argued before WILNER, C.J., and MURPHY and THEODORE G. BLOOM (retired, specially assigned), JJ.

WILNER, Chief Judge.

Appellant's husband, Joseph Loveman, is the owner of a building leased to appellee for use as a nursing home. Claiming that a dispute had arisen as to which of the parties was "entitled" to the authorized bed capacity of the nursing home, appellant, as guardian for her husband, filed suit in the Circuit Court for Baltimore County for a declaratory judgment and injunctive relief.

On appellee's motion, the court dismissed the complaint, without prejudice, apparently on the ground that there was an administrative remedy available from the Health Resources Planning Commission (HRPC) that appellant had failed to exhaust.[1] Appellant complains that the court erred in that

---

1. Neither the order dismissing the complaint nor a subsequent order denying appellant's motion to alter or amend the order of dismissal assigned any reasons for the court's action. The motion to dismiss has not been included in the record extract; nor has the memorandum filed in support of the motion, the motion to alter or amend, or a transcript

determination. She asserts that (1) the controversy concerns the interpretation of the lease between the parties, and the court had primary jurisdiction to enter a declaratory judgment with respect to that interpretation, (2) there was no available administrative remedy to resolve that controversy, and (3) the dispute was ripe for judicial resolution.

## BACKGROUND

In 1960, Mr. Loveman opened a 98-bed comprehensive care facility at 333 Harlem Lane, in Baltimore County. It appears—although the record is not entirely clear on this point—that the home was operated through a corporation known as Shangri-La Nursing Center, Inc., in which Loveman owned all the stock, but that he was the licensee and he ran the home as an owner-operated facility. In 1978, the Legislature enacted a comprehensive health planning law that, among other things, created a health planning and development agency and provided that a health care facility may not be established, relocated, or undergo a change in bed capacity without a certificate of need (CON) issued by that agency. The law exempted from that requirement—i.e., grandfathered—a health care facility, such as that operated by Mr. Loveman, that was in operation before June 1, 1978. That exemption underlies the instant dispute.

Mr. Loveman operated the home through Shangri-La until 1981, when, as a consequence of his being convicted of medicaid fraud, he was required to surrender his nursing home administrator's license and refrain from participation in the management or operation of a nursing home in Maryland. Loveman complied with that restriction by leasing the real property and having Shangri-La sell the personalty used in

---

(if there is one) of any hearing on either motion. In their briefs, the parties assert that the dismissal was based on appellant's failure to exhaust available administrative remedies, so we shall assume that the dismissal was, indeed, for that reason. Given the lack of any explanation in the order, appellant should have included at least appellee's motion in the record extract so that we could tell from the record the basis of the court's decision.

the operation to one Dexter Case. Case, in turn, assigned his rights to Joseph Kaplan and Benjamin Ashman, who proceeded to operate the home under the name Inglenook Nursing and Convalescent Center. Both the lease and the assignment were contingent on Kaplan and Ashman obtaining a license to operate the center. That license was issued in September, 1981.

In 1987, the Center was acquired by Evergreen Health Group, Inc. In December, 1987, Loveman and Evergreen entered into a new four-year lease for the facility, with a six-year renewal option and an option to purchase. HRPC (the successor agency to the Health Planning and Development Agency) concluded that, as there would be no change in services or bed capacity, the acquisition was exempt from CON review. Evergreen eventually exercised the option to renew. Although it is not clear from the record before us, we assume that Evergreen obtained either a new license to operate the home or an approved assignment of the license that had been issued to Kaplan and Ashman.[2]

In November, 1990, Evergreen assigned its lease to appellee, Catonsville Nursing Home, Inc. (CNH). Included in the assignment was Evergreen's nursing home license, although the assignment was made expressly contingent on (1) approval by the Department of Health and Mental Hygiene of the transfer of the license, and (2) a determination by HRPC that a CON was not required to complete the transaction. As in 1987, the Commission, assured that there would be no change in services or bed capacity, determined that the acquisition was exempt from CON review.

As noted, since 1978, a health care facility may not be built or relocated nor, except as otherwise provided in the statute, may the bed capacity or the type or scope of health care

---

**2.** HRPC is not a licensing agency; the CON required under the health planning law is not a license to operate the facility. Nursing homes, as "related institutions," require a license from the Secretary of Health and Mental Hygiene. Md.Code Health–General art., §§ 19–318; 19–301(*l*). That is a separate requirement.

service of an existing facility be changed without a CON. COMAR 10.24.01.02. *See also* Md.Code Health–General art., § 19–115. The obtention of a CON can be a costly and time-consuming process. An application must be made to the Commission, hearings may be held, and a number of statutory and regulatory criteria need to be satisfied; competitors and others may intervene and oppose the application. Although not clearly articulated in the briefs or the papers filed below, it is evident that what appellant fears is that, near or upon expiration of the current lease, CNH will seek permission from HRPC to transfer the beds to another location, that the Commission may grant that request by issuing a CON, and that Loveman will then be left in the position of being unable to lease his property to another licensee unless that licensee obtains a new CON to replace the bed capacity that was moved.

The current lease between Loveman and CNH will expire in December, 1997. It appears that the parties have engaged in some negotiations regarding a renewal but have not reached an agreement. In April, 1994, counsel for CNH wrote to Loveman's attorney offering to extend the lease at a lower rental and a lower purchase option price and pointing out that, if an agreement could not be reached, CNH would not renew the lease and would search for a new location.

Appellant, as guardian for Loveman, filed this action in December, 1994. In the complaint, she laid out some of the history recounted above, asserted that CNH had indicated a possibility of closing the existing facility or terminating the lease early, and contended that a genuine dispute existed as to whether CNH "has the right to transfer, or attempt to transfer, to another location the HRPC authorization (CON exemption) to operate a nursing home with 98 beds." In particular, she averred that the CON exemption "is a right or privilege which runs with the Premises and which CNH enjoys only by virtue of the Lease Agreement" and that CNH therefore "has no right to transfer or attempt to transfer the CON exemption to another location without Loveman's express consent."

As noted, the court dismissed the complaint and denied a subsequent motion to alter or amend its order of dismissal, presumably on the basis that the issue of who owns or is entitled to the CON exemption is a matter for HRPC, rather than the court, to determine and possibly on the alternative basis that there was no existing controversy ripe for a declaratory judgment.

## DISCUSSION

To a large extent, the issue here is one of focus. Appellant seems concerned that, if CNH does not renew the lease, it may seek to transfer the grandfathered 98–bed capacity to a new location, leaving Loveman with a large, single-purpose structure that could not be used for its single purpose without obtaining a CON. The relief sought by appellant in her complaint was a declaratory judgment that the CON exemption to operate the nursing home in Loveman's property was a right or privilege that "runs with the Premises" and an injunction against CNH transferring or seeking authorization to transfer that exemption. She treated the dispute as involving nothing more than an interpretation of the lease and a declaration of the rights of the parties under it.

CNH contends that the question of whether the CON exemption is appurtenant to the property or is part of the license to operate the home does not involve an interpretation of the lease and is not for the court to decide but is a matter that must be decided by HRPC. That agency, it urges, is the entity charged by law with determining whether a CON is required for a particular action and, if one is required, the conditions, if any, under which it should issue. That includes whether an exemption from the CON requirement is an attribute of the license or the property.

At some point while appellant's complaint was pending in the circuit court, CNH filed a petition with HRPC for a declaratory ruling on the same underlying controversy. A regulation of the Commission (COMAR 10.24.01.11) allows "[a]n affected person uncertain as to how any statute or

regulation enforced by the Commission applies to any person or property" to file a petition for declaratory ruling.[3] The regulation allows, but does not require, the Commission to issue such a ruling, subject to judicial review in accordance with the State Administrative Procedure Act. CNH's petition is not in the record extract.

In January, 1996—after the court dismissed appellant's complaint—the Commission issued a ruling. It noted, as a basis for issuing a ruling, that CNH needed to make plans for its future when the current lease expires, that CNH was considering a number of alternatives, including exercising its option to purchase the property, renovating the existing structure, relocating to a new facility, or transferring ownership of the operation, and that each of those alternatives would require Commission approval in some form. Presumably, these alternatives were stated in CNH's petition for declaratory ruling.

The question addressed by the Commission was not precisely the same as that presented to the court, although it was certainly related. The declaratory judgment sought in appellant's complaint was that the grandfathered bed capacity was appurtenant to the property rather than the license. Indeed, the injunctive relief sought was that CNH be enjoined from transferring or even seeking permission to transfer that bed capacity. In comparison, the ruling sought by CNH was that it, as the licensee, rather than Loveman, had the authority to seek Commission approval affecting the beds currently authorized. The Commission found in its favor, declaring that only the licensee, not "the owner of the bricks and mortar" of the home, could seek Commission approvals affecting the facility.

That ruling by the Commission was, of course, not before the court when it dismissed appellant's complaint. The fact that CNH's petition for the ruling was pending was raised by appellant as a reason for the court to act, and the ruling itself

---

**3.** *See also* Md.Code State Gov't art., §§ 10–301–10–305, authorizing administrative agencies to issue declaratory rulings.

was included by CNH as an appendix to its brief as support for the proposition that this is an issue that should be left to the Commission. The content of the ruling—the actual result reached by the Commission—is not important with respect to the issue of whether the court should have exercised jurisdiction and entered a declaratory judgment. We mention the ruling simply because the proceeding before the Commission was made known to the circuit court and is an historical fact.

Md.Code Cts. & Jud.Proc. art., § 3–406 authorizes any person interested under a written contract or whose rights, status, or other legal relations are affected by a statute, regulation, or contract to have determined by a circuit court any question of construction or validity arising under the statute, regulation, or contract and obtain a declaration of rights, status, or other legal relations. Section 3–403 grants the circuit courts jurisdiction to declare such rights, status, or other legal relations. A contract may be construed before or after a breach. § 3–407.

The controlling statute is § 3–409. With an exception not relevant here, section (a) authorizes a circuit court to grant a declaratory judgment in a civil case if it will serve to terminate the uncertainty or controversy giving rise to the proceeding and if (1) an actual controversy exists between the parties, (2) antagonistic claims are present which indicate imminent and inevitable litigation, or (3) a party asserts a legal status, relation, or privilege that is challenged by the adverse party. Subsections (b) and (c), read together, provide that, although a party may obtain a declaratory judgment notwithstanding a concurrent common-law, equitable, or extraordinary legal remedy (subsection (c)), "[i]f a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed in lieu of [a declaratory judgment proceeding]." (Subsection (b)).

Section 3–409 embodies at least three concepts applicable to this case. First, in conjunction with §§ 3–403 and 3–406, subsection (a) establishes certain minimum criteria that must exist in order to justify the entry of a declaratory judgment.

Second, in subsection (b), it carves out one area in which a declaratory judgment is not appropriate—where a special statutory remedy exists for the particular kind of case. Finally, the statute is cast as an authorization, not a mandate. Section (a) states that a court "may" grant a declaratory judgment under the circumstances noted, not that it must. The courts have interpreted that as allowing a measure of discretion "to refuse a declaratory judgment when it does not serve a useful purpose or terminate controversy." *Staley v. Safe Deposit & Trust Co.*, 189 Md. 447, 456–57, 56 A.2d 144 (1947). The process should not be used to decide "purely theoretical questions or questions that may never arise." *Hamilton v. McAuliffe*, 277 Md. 336, 340, 353 A.2d 634 (1976).

Each of these principles is involved in this case. We shall begin with § 3–409(b), upon which most of the debate is centered. Appellant relies on *Md.-Nat'l Capital Park & Planning Commission v. Wash. Nat'l Arena*, 282 Md. 588, 386 A.2d 1216 (1978), to support her argument that there is no special statutory remedy available to resolve this dispute. In that case, a provision in a lease precluded the lessee, who was obliged by the lease to pay all property taxes on the property, from contesting the taxability of the property. In contravention of that clause, the lessee filed an appeal from the Supervisor of Assessment's determination that the property was taxable, whereupon the lessor filed an action for declaratory and injunctive relief to block the lessee from proceeding with the appeal. The lessee defended on the ground, among others, that the incontestability clause was against public policy and therefore void. It persuaded the court to that point of view, leading to a declaratory judgment that the clause was void.

On appeal, we held that, because the defense raised by the lessee could have been resolved in the tax appeal case, it was inappropriate for the court to grant a declaratory judgment. It was our belief that, in creating the property tax appeal boards and the Maryland Tax Court, the Legislature had provided a special form of remedy for that type of case.

The Court of Appeals had a different view and reversed. It construed § 3–409(b) narrowly, holding that "the prohibition against awarding declaratory relief to parties who have alternative statutory or administrative remedies is applicable only where the alternative means of redress was intended to be exclusive." *Id.* at 595, 386 A.2d 1216. Looking then at the law governing the property tax appeal boards and the Maryland Tax Court, the Court held that the clear legislative intent was to limit their jurisdiction primarily to the review of assessment, valuation, and classification of property for tax purposes. The enforceability of the incontestability clause in the lease, the Court declared, was not an issue arising under the tax laws but was a matter of contract interpretation. Though recognizing that the validity of that clause was relevant to the lessee's standing to institute an administrative appeal and that the tax tribunals therefore had incidental or implied power to determine that issue insofar as it pertained to the lessee's standing, the Court nonetheless concluded, at 598–99, 386 A.2d 1216:

"But the fact that an agency may be empowered to decide a legal question that is encompassed by its incidental jurisdiction does not, absent a contrary indication from the Legislature, necessarily deprive the courts of all authority to adjudicate a point of law they could otherwise decide. And certainly no one would doubt the power of the courts of general jurisdiction in this state to construe, interpret and enforce provisions of contracts, leases, and other written instruments."

Appellant views her case as falling precisely within this principle. She is not concerned, she says, with any provision of the Health–General article concerning who may apply to HRPC for CON approval; even if CNH is fully authorized by that law to seek HRPC approval for a change in bed status, she wants a determination that it is precluded from doing so by the lease. That, she urges, involves an interpretation of the lease, which may be the subject of a declaratory judgment.

We see a significant distinction between *Wash. Nat'l Arena* and this case. The jurisdiction vested in the tax tribunals was

principally an adjudicatory, not a quasi-legislative policy-setting one. It was essentially to determine whether the taxing authorities had properly classified, valued, or assessed the property for tax purposes. Whether by contract a lessee can validly waive its right to contest a determination that the leased property is taxable is not central to the tribunals' carrying out of their limited adjudicatory function. As the Court pointed out, there was no clear legislative intent to vest jurisdiction over that kind of question exclusively in the tax tribunals; a declaratory judgment by a court on that issue would in no way impede those tribunals from carrying out their assigned function.

That is not the case here. HRPC is more than an adjudicatory body. It is a policy-setting and policy-implementing one. It is charged by Health General art., § 19–114 with developing and periodically updating a State Health Plan that must include (1) a description of the components that should comprise the health care system, (2) the goals and policies for Maryland's health care system, (3) identification of unmet needs, excess services, minimum access criteria, and services to be regionalized, (4) an assessment of the financial resources required and available for the health care system, (5) the methodologies, standards, and criteria for CON review, and (6) priority for conversion of acute capacity to alternative uses where appropriate.

The CON requirement is the predominant device chosen by the Legislature for implementing the State Health Plan and for assuring that scarce resources are allocated rationally and efficiently in accordance with the Plan. HRPC is required by § 19–114(e) to develop standards and policies relating to the CON program that address the availability, accessibility, cost, and quality of health care and to review those standards periodically to reflect new developments in health planning, delivery, and technology. Through §§ 10–301—10–305 of the State Government article and through its tacit acceptance of COMAR 10.24.01.11, the Legislature has allowed the Commission to determine issues such as this both by issuing declarato-

ry rulings and through deciding contested cases in which those issues are raised.

■ In this setting, subject, of course, to judicial review, the determination of who is authorized to seek Commission approval for any change in the status quo, including the transfer of bed capacity to another location, is central to the carrying out of HRPC's statutorily assigned mission. Various legal arrangements—leases, lease-backs, options, rights of refusal, and a host of other devices—can be used to structure a relationship between parties. If the agreements used to establish those arrangements are allowed to escape Commission oversight, through the preemptive device of a declaratory judgment, based on the particular language the parties have chosen to use, there will be a serious erosion in the Commission's ability to carry out its legislative mandate. We believe, therefore, that the statutory and regulatory authority of HRPC to decide that issue—through a declaratory ruling or a decision in a contested case—does represent a special form of remedy for this specific kind of case and that, accordingly, it would have been inappropriate for the court to render a declaratory judgment as requested by appellant.

■ Even if that were not the case, and notwithstanding that the Commission found a basis for issuing a declaratory ruling, the court could also have declined to issue a declaratory judgment on the ground that it would not necessarily have terminated the controversy or avoided other inevitable litigation. CNH had not actually taken any steps to move its location or to seek HRPC approval to do so. The parties were still in negotiations regarding a renewal of the lease which, at the time the action was filed, had three more years to run. At best, a decision on this matter at that stage would merely strengthen the negotiating position of one side or the other but would not serve to terminate an existing controversy.

A declaratory judgment that CNH had the authority to seek a relocation of the bed capacity would not preclude Loveman from contesting any such request before HRPC or from seeking judicial review of an unfavorable decision by the

Commission. Nor would a contrary judgment necessarily preclude HRPC, which was not a party to this action, from later ruling that such a clause was against public policy. In either event, further litigation would be inevitable.

For these reasons, we find no error in the court's dismissal of appellant's complaint.

JUDGMENT AFFIRMED;

APPELLANT TO PAY THE COSTS.