ANDREW ROLLIN STALEY, ET UX. *v.* SAFE DEPOSIT & TRUST COMPANY OF BALTIMORE, ET. AL.

[No. 56, October Term, 1947.]

448

*Decided December 19, 1947.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Carlyle Barton* and *Carl R. Miller,* with whom was *Stuart E. Brown, Jr.,* on the brief, for the appellants.

*William R. Semans* for James J. Ryan, guardian *ad litem* for Richard Seth Staley, infant, appellee.

*John M. Butler* and *Venable, Baetjer & Howard* for the Safe Deposit & Trust Company of Baltimore and Augustus E. Staley, Jr., trustees, appellees.

MARKELL, J., delivered the opinion of the Court.

This is an appeal from a declaratory decree construing a trust agreement, dated October 18, 1934, between

Augustus E. Staley, of Decatur, Illinois (now deceased), donor, and Safe Deposit and Trust Company of Baltimore, trustee, and Augustus E. Staley, Jr., of Decatur, co-trustee. All the trust estate is held by the trustee. Originally all, and now almost all, of it consists of stock of the A. E. Staley Manufacturing Company. The value of the estate is now about $4,500,000, the annual income about $100,000. The life beneficiary is Andrew Rollin Staley, appellant, one of the donor's five children. On the same day (October 18, 1934) the donor executed four other trust agreements, identical except as to names of beneficiaries, for his four other children as life beneficiaries. The donor died in 1940. All five children are still living. Andrew was born in 1907.

The trust agreement is an elaborate instrument, carefully prepared by the donor's Illinois counsel. Its provisions now material may be briefly summarized. Subject to payment of specified income to the donor for life, the net income is to be paid (1) to Andrew for life, and until termination of the trust (2) upon Andrew's death, "if at the time of his death he be married and living with his wife," then "per capita, share and share alike, to the said surviving spouse of Andrew" until death or remarriage "and to such of the children of * * * Andrew as shall be living, from time to time," and to the living "descendants" of deceased "children," *per stirpes*, and (3) after the death of Andrew, his surviving spouse [or after her remarriage] and all his "children and descendants", to "such of the children of the Donor, namely, Ione * * *, Augustus * * *, Mary * * * and Ruth * * * as shall be living from time to time" and to the living descendants of those dead, *per stirpes*; (4) upon the termination of the trust the corpus is to be paid, "share and share alike, to the bodily heirs" of Andrew then surviving, and the surviving descendants of "any deceased bodily heir," *per stirpes*. The trust is to terminate *(a)* twenty years after the death of Andrew or *(b)* forty years after date, if Andrew is then dead. If the Trustee should "be discharged by a court

of competent jurisdiction" *(e.g.* resign), the donor's widow, and if she be dead, then "the presiding judge of the Circuit Court in Macon County, Illinois" may appoint a corporation or bank (not necessarily of Maryland) as trustee.

The only question submitted for declaratory decree and decided was whether, in the payment of income, "the children" of Andrew include an adopted child, Mary Elizabeth Staley, born 1938, adopted under the laws of Illinois in 1940. The decree below answered this question in the negative. The adoptive parents, Andrew and his wife, appeal.

If Andrew dies before October 18, 1954, or after October 18, 1974, the trust will continue and the income will be distributed for twenty years after his death. If he dies after October 18, 1954, and before October 18, 1974, the trust will terminate on October 18, 1974. In other words, the provisions for distribution of income after his death may become operative for any period from one day to twenty years. If he dies at seventy, they will not become operative until thirty years hence. Until he dies, the administration of the trust cannot be affected by the question now raised. If Andrew should survive Mary Elizabeth, the question will never become material unless he hereafter adopts another child. If the Trustee should resign, the distribution of income to "children" may never be made in Maryland.

Of the donor's five children each has been married and has one or more natural children. All but one (Augustus) have been divorced and remarried (to different spouses) ; one has been married four times and divorced three. When the trust agreements were executed three of the divorces had occurred and one was contemplated; none of the five children had adopted a child or is shown to have contemplated adoption. Andrew was first married in 1929, has a child, Richard Seth Staley, born in 1930, was divorced in 1930, and was married in 1934. His present wife is not able to have children. None of the donor's children except Andrew

has ever adopted a child. Andrew, his wife and their adopted child, Mary Elizabeth, now live in Arizona. Andrew's son, Richard, lives with Andrew's former wife in Illinois. None of the donor's children or descendants or their spouses, live in Maryland. Appellants stress the family record of marriages and divorces and the provision for surviving spouses, as showing that the donor contemplated the possibility of future separations, divorces and marriages—and also adoptions—i.e., intended the income to go to whomever his children might choose as spouses or as "children." They principally stress the provisions for distribution of income to "children" and corpus to "bodily heirs," as showing that adopted children do not share in corpus but share in income.

The bill was filed by the trustees against all the donor's children, their spouses and natural children, Andrew's adopted child and "any persons not in being whose interest in the subject matter of this suit may be affected by any decree or order which may be entered in these proceedings." It alleges that: Andrew has advised the trustees that he is planning the establishment of a trust estate, wishes to make equal provision for Mary Elizabeth, Richard and "such other children as he may have," and has inquired of the trustees whether or not they will, in the event of his death leaving Mary Elizabeth or her descendants surviving, consider her a "child" within the provisions for distribution of income and will distribute income accordingly. The trustees are advised that under the language of the trust agreement doubt exists as to whether or not the donor intended to include as a recipient of income Andrew's adopted child. Due to the uncertainty which exists regarding this question, the trustees feel that they should seek the guidance and protection of the court in the interpretation of the trust agreement, "to the end that upon the death of * * * Andrew * * * distribution of the income from the trust estate shall be made by the trustees in accordance with such decree as this court may pass." The bill prays (1) assumption of jurisdiction over the trust agreement, (2)

a declaratory judgment as to the meaning of "children," and (3) general relief. Process by publication was prayed against all the defendants, including "persons not in being".

Of the defendants, Andrew and his wife appeared and answered; the other adults did nothing. Andrew alleges that it was the intent of the donor that "children" includes adopted children as sharing in income. Andrew and wife join in the prayers of the bill. A guardian *ad litem* (the same person) was appointed for Mary Elizabeth and Richard, all the other infants and later for "any * * * persons not in being." Acts of 1945, ch. 723, Art. 16, sec. 252A. Counsel was appointed for Richard, and filed an answer of Richard's guardian *ad litem,* averring that the adopted child would not be entitled to share in either income or corpus. The usual formal answer filed by the guardian *ad litem* for the other infants. At the hearing counsel for Andrew and wife purported also to appear (apparently without appointment by order of court) for Mary Elizabeth. At that time plaintiffs filed an amended petition for appointment of a guardian *ad litem* for infant defendants and "persons not in being," the appointment was made, and an amended answer was filed by the guardian *ad litem* for all such defendants and persons not in being, including Mary Elizabeth, averring that Mary Elizabeth would not be entitled to share in either income or corpus. No appeal was taken by Mary Elizabeth through her guardian *ad litem* or otherwise. The appeal of Andrew and wife was ably argued by Illinois and Maryland counsel for appellants, in support of the position that in distribution of income "children" includes adopted children, and by Maryland counsel for Richard in support of the opposite position and the decision below.

The trust agreement, *e. g.,* the word "children," should be construed according to the law of Illinois, the donor's domicil. *Prince de Bearn v. Winans,* 111 Md. 434, 470, 74 A. 626; *Restatement, Conflict of Laws,* sec. 296. Apparently without formal notice and request (Art. 35,

sec. 59; *Prudential Ins. Co. v. Shumaker,* 178 Md. 189, 197, 198, 12 A. 2d 618) it was informally or tacitly agreed by all parties and the lower court, and it was agreed at the argument in this court, that judicial notice shall be taken of "the common law and statutes" of Illinois (Art. 35, sec. 56), including the opinions of the Supreme Court of Illinois declaring the common law and construing the statutes. We shall act accordingly.

The trust agreement should be construed according to the law of Illinois, not because the law of Illinois by its own force is operative in Maryland, but because by that part of the common law of Maryland known as the conflict of laws the construction of the trust agreement depends upon the law of Illinois. The only law in force in Maryland is its own law (including the laws of the United States). Within constitutional limitations, the State of Maryland "theoretically could draw a line of fire around its boundaries" and recognize nothing concerning property within its boundaries that happened outside. "But it prefers to consider itself civilized and to act accordingly." Direction *Der Disconto-Gesellschaft v. United States Steel Corporation,* 267 U. S. 22, 28, 45 S. Ct. 207, 208, 69 L. Ed. 495; *Restatement, Conflict of Laws,* sec. 1.

Though counsel for all parties unite in urging that the Maryland courts can and should exercise jurisdiction in the instant case, the question presents itself whether this can and should be done. The fact that (*a*) the question of construction does not now, and may never, affect the rights or duties of plaintiffs and can never affect the rights of Andrew and wife, upon whose inquiry to plaintiffs the bill was based, (*b*) no other party is before the court by personal service or voluntary appearance, and (*c*) the question may be conclusively answered by some decision of the Supreme Court of Illinois before it takes form in action, makes it necessary that we consider whether a declaratory decree is within the power of the Maryland courts and, if so, will "serve to terminate the uncertainty * * * giving

rise to the proceedings" or will be a successful use of such procedure. Acts of 1945, ch. 724, Art. 31A, sec. 6.

The question of power may become a constitutional question under Article 23 of the Declaration of Rights and a federal question under the Due Process Clause of the Fourteenth Amendment or under the Full Faith and Credit Clause. Art. 4, sec. 1. A judgment *in personam* without personal service (or appearance) or a judgment *in rem* without jurisdiction over the *res* is not due process (*Pennoyer v. Neff*, 95 U. S. 714, 24 L. Ed. 565) and is not entitled to full faith and credit in another state. *Williams v. State of North Carolina*, 325 U. S. 226, 65 L. Ed. 1092, 89 L. Ed. 1577, 157 A. L. R. 1366; *Miller, Equity Procedure*, sec. 120; see also *Borchard, Declaratory Judgments*, 2d Ed., pp. 256-258. The broad language of chapter 723 of the Acts of 1945 (Art. 16, sec. 252A), providing that a guardian *ad litem* may be appointed for persons not in being and that orders or decrees thereafter passed shall be binding upon such persons not in being "to the same extent as if such * * * persons were in being * * * and had been duly served and had appeared and answered," must be construed, in harmony with other statutory provisions for constructive service and in order to avoid conflict with Article 23 of the Declaration of Rights, as applicable only to proceedings *in rem* or *quasi in rem* to which constructive service is properly applicable.

A bill to construe a will or trust agreement, for the purpose of present distribution or other action by a fiduciary (*Perkins v. Iglehart*, 183 Md. 520, 523, 39 A. 2d 672), or a bill to quiet title, ordinarily based on present possession, asking judgment but no execution, (*Arndt v. Griggs*, 134 U. S. 316, 10 S. Ct. 557, 33 L. Ed. 918; *Gathwright v. Mayor and City Council of Baltimore*, 181 Md. 362, 30 A. 2d 252, 145 A. L. R. 590), may be prosecuted, under statutory authority, as a proceeding *in rem* (or *quasi in rem*), without personal service. This may likewise be true of a bill for a declaratory judgment construing a will, even if no present action is neces-

sary, if the bill presents an actual controversy between adverse parties seeking a determination of their legal rights. *Cf. Nashville C. & St. L. Ry. v. Wallace,* 288 U. S. 249, 261, 262, 53 S. Ct. 345, 77 L. Ed. 730, 87 A. L. R. 1191; *Aetna Life Ins. Co. of Hartfort, Conn, v. Haworth,* 300 U. S. 227, 241, 57 S. Ct. 461, 81 L. Ed. 617, 108 A. L. R. 1000. In view of the Supreme Court's emphasis on this feature of a valid declaratory judgment and its previous decisions (apparently not overruled) denying the judicial nature of a declaratory judgment when such a controversy is lacking (*Muskrat v. United States,* 219 U. S. 346, 31 S. Ct. 250, 55 L. Ed. 246; *Liberty Warehouse Co. v. Burley Tobacco Growers Ass'n,* 276 U. S. 71, 88, 89, 48 S. Ct. 291, 72 L. Ed. 473), it may be doubted whether a declaratory judgment in the instant case would be entitled to full faith and credit in another state, or would constitute due process or would be *res judicata* in a future suit in Maryland after Andrew's death. We have held that not every suit relating to stock of a Maryland corporation, which for some purposes has a *situs* in Maryland, is an action *in rem* and can be maintained without personal service. *Ortman v. Coane,* 181 Md. 596, 31 A. 2d 320, 145 A. L. R. 1388. Section 11 of the Uniform Declaratory Judgments Act, in both the original and the amended acts, Acts 1945, c. 31A, sec. 11, provides that "all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declarations shall prejudice the rights of persons not parties to the proceedings." *United Slate, etc., Workers v. United Brotherhood of Carpenters,* 185 Md. 32, 36, 37, 42 A. 2d 913, 915. Ordinarily there is no difference as to necessary parties between a declaratory proceeding and any other proceeding *in personam. Martin v. United Slate Workers Association,* 189 Md. 383, 56 A. 2d 28.

Assuming for the sake of argument that the Maryland courts can exercise jurisdiction in the instant case, should they do so? Counsel apparently concede, at any rate it is generally held, that courts have some judicial

discretion to refuse a declaratory judgment when it does not serve a useful purpose or terminate controversy. *Borchard, supra,* Chapter V, pp. 293, 312-314. Referring to criticism of the exercise of such discretion by federal courts, *Borchard* says the courts are right and the critics wrong. *Supra,* 312. "It seems to us that the existence in the court of discretion of this kind is essential to the successful use of declaratory procedure. Without it the court and the public would have no really effective protection against the presentation of moot cases or of cases involving only remote contingencies, attempts to use the courts for purposes of giving legal advice or for answering questions as to which no reasonable doubt could exist, and the fomenting of unnecessary litigation. In *Gray v. Spyer,* [1922] 2 Ch. 22, at page 27, Lord Sterndale, speaking of declaratory judgments in a court which has had long experience with them, says, 'Properly used, they are very useful; improperly used, they almost amount to a nuisance.' " *National Shawmut Bank of Boston v. Morey,* 320 Mass. 492, 497, 498, 70 N. E. 2d 316.

*Borchard* says the tendency in the United States is to follow the English courts in giving to the declaratory judgment the widest scope. On the question of parties, though the English courts are not restricted by constitutional or practical limitations arising out of the existence of forty-eight semi-sovereign states, their practice is not to decide as to future rights under wills or similar instruments except within limits. "But where all the parties who in any event will be entitled to the property are of age and are ready to argue the case, the reason of the rule [not to decide as to future rights] departs, and it becomes a bare technicality. The reason of the rule is this, that the Court will not decide on future rights, because until the event happens it does not know who may be interested in arguing the question, and therefore may be shutting out parties who, when the event happens, may be entitled to succeed." *Curtis v. Sheppard,* 21 Ch. D. 1, 4; *Jessel, M. R.* "On the whole we may

say that when the remainder is vested and not contingent, when the parties to be affected by the judgment are *in esse* of age, and represented before the court, the general rule is to make the declaration." "They [the courts] have refused to consider suits relating to rights which could vest only in the future, and for whose determination there is no immediate need." *Borchard, supra,* 413, 703, citing American and English cases.

In *Ryan v. Herbert,* 186 Md. 453, 47 A. 2d 360, we went quite as far as the critics of the Maryland and Pennsylvania decisions under the original act (*Borchard, supra,* pp. 325-327; *Case, Declaratory Judgments in Maryland,* 6 Maryland Law Review 221; *Borchard, Pennsylvania Clarifying Amendment for Declaratory Judgments,* 93 University of Pennsylvania Law Review 50; *Legislative Clarification for Declartory Judgments,* 8 Maryland Law Review 237) or the preamble stating the intent of the amended act goes (*Schultz v. Kaplan,* 189 Md. 402, 56 A. 2d 17) in giving a liberal construction to the amended act. *Ryan v. Herbert,* however, falls short of the instant case. In that case we held that Pennsylvania decisions under the original act have no more weight than Maryland cases under the original act. All living persons who might possibly have an interest were made parties, and guardians *ad litem* were appointed for the minors. We found "that the grandchildren of the testator assert a status or right, and that the great grandchildren, represented by their guardian *ad litem,* deny that right and assert an interest in the share of their father, not contingent on his death, but vested and subject to be divested only in the event they die before he does. These contentions bring the case within both the wording and the declared intention of the act, and we think the remedy sought is applicable." The decision was not based on the law of any other state. If afterborn descendants should hereafter raise the same question, that decision, if not *res judicata,* would ordinarily be law under the doctrine *stare decisis.* Under that doctrine a Maryland decision on a question of Illinois

law would not, as against a subsequent Illinois decision to the contrary, be law for future cases.

When it is necessary, it is as much the duty of this court to decide a question involving Illinois law as one involving only Maryland law. But comity and judicial discretion suggest that this question of Illinois law be not unnecessarily decided. In *Perkins v. Iglehart,* 183 Md. 520, 545, 39 A. 2d 672, this court, instead of following its ordinary practice of making complete distribution of a trust estate, directed distribution by the trustee to the Virginia executors of a son of the testatrix, leaving to the Virginia courts determination, by Virginia law, of questions as to distribution by the executors. The Illinois Adoption Act has been in effect since 1874. It has been construed and applied by the Supreme Court of Illinois in a number of cases. In the instant case the decision below is based on a full and able opinion of the lower court, which reviews the Illinois cases deemed pertinent. The earlier cases were also reviewed in the latest case, *Belfield v. Findlay,* 389 Ill. 526, 60 N. E. 2d 403, decided in 1945. Although counsel for appellants contend that the lower court "misunderstood" the *Belfield* case, they also characterized the decision in that case as an "amazing conclusion" and contend that "the reasoning in the *Belfield* case proceeds from an obviously incorrect conclusion," that a quotation in the opinion, purporting to generalize the result of previous decisions, is a "misleading, unnecessary dictum", and does not express, nor was intended to express, the law of Illinois, and that even if the *Belfield* case "overruled" the decisions prior to 1934, it thereby made new law, which is not applicable to the construction of the Staley trust agreement. If any of these contentions are sound and pertinent (which we do not suggest), it is obviously fitting that the Supreme Court of Illinois, whenever occasion may arise, interpret its own decision in the *Belfield* case; if we should approve (or disapprove) these contentions, that court might hereafter hold that we had "misunderstood" and misapplied the *Belfield* case.

The particular circumstance that the two prospective parties to a possible future controversy, a boy of 17 and a girl of 9, have not been personally served with process and are both represented by a guardian *ad litem* who takes a position in favor of the boy and against the girl, might be eliminated by rearranging the parties, making one of the children plaintiff (by next friend) and the other defendant, and perhaps bringing the infant defendants into Maryland for personal service. Such maneuvers would, however, emphasize the artificial nature of the controversy and the fact that this proceeding is really designed to obtain for Andrew, whose rights under the trust agreement are not in doubt, legal advice (which might prove to be bad advice) about the laws of Illinois for the purpose of disposing of his own individual property. We think that in the circumstances (if power exists) a declaratory decree would be a misuse of judicial power and discretion.

As the decree below does not affect Andrew's legal rights, it does not constitute prejudicial error of which he can complain on appeal. As we have expressed doubt, but have not decided, whether the decree is not a nullity as against Mary Elizabeth, the decree is a cloud on her possible future rights. As her guardian *ad litem* has not appealed for her, but Andrew and wife have undertaken by appeal to assert her rights, we will treat this case as if appellants had been formally appointed her guardians *ad litem* for the purpose of appealing from the decree below.

> *Decree reversed and bill dismissed, costs to be paid out of the income of the trust estate.*