810 A.2d 1029

**Lawrence POLAKOFF, et al.**

v.

**Brenda HAMPTON, et al.**

**No. 2471 Sept. Term, 2001.**

Court of Special Appeals of Maryland.

Nov. 7, 2002.

**16**

Ira C. Cooke (David A. Lynd and Cooke & Associates Limited, on the brief), Towson, for appellants.

Kevin Urick (Saul E. Kerpelman & Associates, P.A., on the brief), Baltimore, for appellees.

Argued before SALMON, DEBORAH S. EYLER, McAULIFFE, JOHN F. (Ret'd, Specially Assigned), JJ.

DEBORAH S. EYLER, Judge.

The Circuit Court for Baltimore City granted a motion to dismiss a declaratory judgment action brought by Lawrence Polakoff; CFSP Limited Partnership ("CFSP"); Chase Management, Inc. ("Chase"); Stanley Sugarman, Sugarcorn Realty ("Sugarcorn"); and Homewood Realty, Inc. ("Homewood"), the appellants, against Brenda A. Hampton, individually and as mother and next friend of Brenda Hampton, a minor; Brenda Hampton; Kimberly Robinson, individually and as mother and next friend of Kaletha Leggette; Kaletha Leggette; and Kerpelman & Associates, P.A. ("the Kerpelman firm"), the appellees. Also named as defendants were "[a]ll other similarly situated Litigants, named or unnamed[,] Who may in the future claim Injuries due to alleged lead Exposures in the State of Maryland."

On appeal, the appellants present four questions for review, which we have combined into one:

Did the circuit court err in dismissing the complaint on the ground that the appellants were not entitled to seek declaratory relief? [1]

The appellees have moved to dismiss the appeal as not having been taken from a final judgment.

For the following reasons, we shall deny the appellees' motion to dismiss the appeal and affirm the judgment of the circuit court.

---

1. The four questions as presented by the appellants are:

"I. Did the trial court err by granting a Motion to Dismiss for Brenda Hampton on the basis that the Plaintiffs (Appellants here) were not entitled to an equitable remedy?

II. Did the trial court err by granting a Motion to Dismiss for Kerpelman and Associates, P.A., on the basis that the Plaintiffs (Appellants here) were not entitled to an equitable remedy?

III. Did the trial court err by granting a Motion to Dismiss for "Other Similarly Situated Litigants" on the basis that the Plaintiffs (Appellants here) were not entitled to an equitable remedy?

IV. Did the trial court err by granting a Motion to Dismiss for Kaletha Leggette on the basis that the Plaintiffs (Appellants here) were not entitled to an equitable remedy when there are pending matters as to possible legal remedies against the Plaintiffs in a Declaratory Judgment Action?"

## FACTS AND PROCEEDINGS

The appellants alleged the following facts in their complaint for declaratory relief.

Polakoff holds interests in several limited partnerships and other business entities that own or manage numerous residential rental properties in Baltimore City. One such property, 1716 North Washington Street, is owned by CFSP and managed by Chase. Brenda A. Hampton and her minor daughter Brenda Hampton ("the Hampton appellees") live at that address.

On February 2, 2001, CFSP and Chase received from the Baltimore City Health Department an Emergency Violation Notice and Order to Remove Lead Nuisance for 1716 North Washington Street stating, *inter alia*, that the premises had been inspected for lead on January 29, 2001, and test results revealed the presence of lead-based paint. In connection with the violation notice, CFSP and Chase were informed that Brenda Hampton had been diagnosed with an elevated blood lead level ("EBL") of 22 g/dl, as first documented by test results on June 27, 2000.[2]

Sugarman also holds interests in several limited partnerships and other business entities that own and/or manage a number of residential rental properties in Baltimore City. One of those properties is 1735 Poplar Grove Street, which is the residence of Kimberly Robinson and her minor daughter Kaletha Leggette ("the Robinson/Leggette appellees"). From January 1986 until March 30, 2000, Sugarcorn owned that property and Homewood managed it.

In July 1999, Homewood was informed that Kaletha Leggette had been diagnosed with an EBL of 17 g/dl, as first documented by test results on July 7, 1999. About a year later, on June 30, 2000, Robinson, as mother and next friend of

---

**2.** An "EBL" is "a quantity of lead in whole venous blood, expressed in micrograms per deciliter (g/dl), that exceeds the specified threshold level." Md.Code (1996 Repl.Vol., 2001 Supp.), section 6–801(f) of the Environment Article.

Leggette, filed a personal injury tort action against Homewood, in the Circuit Court for Baltimore City, alleging that Leggette had sustained personal injuries as a consequence of being exposed to lead paint at the 1735 Poplar Grove Street premises. Robinson and Leggette are represented in that tort action by the Kerpelman firm.

On those facts, the appellants stated one count for declaratory relief, asking the court to interpret Md.Code (1996 Repl. Vol., 2001 Supp.), section 6–828(b) of the Environment Article ("Env."), which is part of the "Lead Poisoning Prevention Program Act" enacted by the General Assembly by Chapter 114, Acts of 1994, codified at Md.Code Env. sections 801 *et seq.* (1996 Repl.Vol., 2001 Supp.), to "permanently bar" the Hampton appellees "from filing an action against the [appellants], or any related entities dealing with the ownership and/or management" of 1716 North Washington Street "for damages arising from alleged injury or loss caused by the ingestion of lead paint." They likewise sought a declaration that the Robinson/Leggette appellees are "permanently barred from filing an action against [the appellants], or any related entities dealing with the ownership and/or management" of 1735 Poplar Grove Street, "for damages arising from alleged injury or loss caused by the ingestion of lead paint." Finally, they asked the court to declare that "all persons at risk that are first documented by a test for EBL of 24 g/dl or less performed on or after February 24, 1996, or 19 g/dl or less performed on or after February 24, 2001, may not bring an action against an owner of an affected property for damages arising from alleged injury or by the ingestion of lead."

After all the appellees except the Hampton appellees were served, "Saul E. Kerpelman, *pro se,*" filed a motion to dismiss, in which he argued, *inter alia,* that the complaint did not set forth a controversy that properly could be resolved by declaratory judgment, and even if it did, the court should exercise its discretion to refuse to entertain the action because it would not serve a useful purpose or terminate a controversy. In addition, Kerpelman pointed out that in the pending tort action by the Robinson/Leggette appellees against Homewood,

Homewood had moved for summary judgment under Env. section 6–828(b), on the same grounds the appellants were advocating in their declaratory judgment action, and the motion had been denied. Kerpelman argued that the pending tort action is an actual controversy in which the issue raised by the appellants can be decided; and that it is inappropriate for the issue to be raised abstractly and hypothetically in a declaratory judgment action. Kerpelman requested a hearing on the motion to dismiss.

The Hampton appellees were served with the complaint after the motion to dismiss was filed. Neither they nor any of the other appellees filed answers, motions to dismiss, or responsive pleadings of any sort.

The appellants filed an opposition to the motion to dismiss, which was followed by a reply memorandum by Kerpelman and a sur-rebuttal memorandum by the appellants.

The hearing on the motion to dismiss took place on December 10, 2001. The court held the matter *sub curia* and, on January 3, 2002, issued a memorandum opinion and order granting the motion. The court noted that the appellants had conceded at the hearing that the question of whether Env. section 6–828(b) bars certain "persons at risk," as that term is defined by statute,[3] from filing lead paint personal injury actions against property owners is being litigated in a number of pending personal injury tort cases, including the Robinson/Leggette appellees' tort action against Homewood. The court concluded that under the circumstances it was not appropriate for it to entertain a declaratory judgment action on the same issue. The court went on to observe that the

---

**3.** A "person at risk" is "a child or a pregnant woman who resides or regularly spends at least 24 hours per week in an affected property." Env. section 6–801(p). With certain exceptions provided by statute, an "affected property" means "[a] property constructed before 1950 that contains at least one rental dwelling unit; or [][a]ny residential property for which the owner makes an election," by statute, to comply with the "Reduction of Lead Risk in Housing" subtitle of the Environment Article of the Maryland Code. Env. section 6–801(b)(1). In this opinion, when we refer to property owners, or landlords, we are referring to owners of affected properties, as defined in the pertinent subtitle.

appellants were attempting to use the declaratory judgment process to sidestep the unfavorable summary judgment ruling against Homewood in the Robinson/Leggette appellees' tort action and, in addition, that no useful purpose would be served by allowing the declaratory judgment action to proceed.

The circuit court's memorandum opinion and order and a separate judgment order were recorded on the docket in an entry that reads: "defts' Motion to Dismiss 'GRANTED.'"

The appellants filed a notice of appeal. In this Court, the Kerpelman firm filed a brief on behalf of "the appellees."

## DISCUSSION

### I

The appellees have moved to dismiss the appeal on the ground that it was not taken from a final judgment and this Court therefore lacks jurisdiction to hear it. *See* Md.Code (2002 Repl.Vol.), section 12–301 of the Courts and Judicial Proceedings Article ("CJ") (stating that a right of appeal exists from a final judgment). They contend that the claims against the Hampton appellees were not ruled upon, and thus, under Rule 2–602(a), the court's judgment was not final because it did not resolve all claims against all parties. More specifically, the appellees argue that the motion to dismiss was filed only on behalf of the Kerpelman firm and the Robinson/Leggette appellees, the firm's clients in the tort action against Homewood, and not on behalf of the Hampton appellees; and because the motion did not cover the Hampton appellees, the court's order granting it did not dispose of the claims against them.

The appellees are correct that ordinarily, for a judgment to be final and appealable, it must resolve all claims against all parties to the case. *See* Md. Rule 2–602(a). Our review of the record reveals that, contrary to the appellees' assertion on appeal, however, the parties and the circuit court treated the motion to dismiss filed by "Saul E. Kerpelman, *pro se*," a nonparty, as having been filed on behalf of all the defendants in

the case, and the court's granting of the motion as having dismissed all the claims against all the defendants in the case.

At oral argument in this Court, counsel for the appellees took the position that the motion to dismiss in fact was filed by the Kerpelman firm on behalf of itself and the Robinson/Leggette appellees. The contents of the motion belie that assertion, however. As noted above, the motion to dismiss was filed by Kerpelman, the principal lawyer in the Kerpelman firm, who was not a party to the case. The arguments advanced in the motion—that there was no justiciable controversy and, even if there was, the court should exercise its discretion not to entertain the claim for declaratory relief—pertained to all the defendants in the declaratory judgment action, not just the Kerpelman firm. Indeed, the motion did not set forth an argument that the Kerpelman firm, in contradistinction to the other defendants, was not a proper party or was not properly subject to suit for declaratory relief. Moreover, the motion to dismiss sought dismissal of the entire declaratory judgment action, not just the claim against the Kerpelman firm. It is noteworthy that other than Kerpelman's motion to dismiss, no responsive pleading or motion was filed in the case.

Kerpelman appeared and argued the motion in the circuit court. While he mentioned to the court that he was in the unusual position of being a party to the case (which he actually was not), he did not specify that he was representing any other of the defendants, or only certain of the other defendants, and the argument he presented pertained to all the other defendants. In addition to arguing that the declaratory judgment action was not proper with respect to the Robinson/Leggette appellees, because there already was a pending tort action by them in which the same legal issues had been raised on summary judgment, Kerpelman argued that the declaratory judgment action was not proper with respect to the Hampton appellees, because there was no existing controversy between them and the appellants. His argument also covered the unnamed "all other similarly situated" defendants. The only defendant Kerpelman did not present a party-specific argument for was the Kerpelman firm.

The interaction between counsel and the court during the hearing shows that it was clear to counsel and the court that Kerpelman's motion was a request to the court to dismiss all the claims against all the defendants in the case. The motion was argued as such, and was ruled on as such by the court. The court's written opinion addressed the propriety *vel non* of declaratory relief respecting all the defendants and concluded that the motion to dismiss "the complaint for declaratory judgment" should be granted. The docket entry stating "defts' Mot" effectuated that ruling. Accordingly, the court's order dismissed the entire complaint, *i.e.*, all claims against all defendants, and thus constituted a final, and hence appealable, judgment.

## II.

The appellants' complaint for declaratory relief quotes subsection (b) of Env. section 6–828. In its entirety, Env. section 6–828, entitled "Failure to give notice to owner in compliance," provides:

(a) *Applicability.*—This section applies to an owner of an affected property who has, with respect to the affected property, complied with the applicable requirements of §§ 6–811, 6–812, 6–815, and 6–819 of this subtitle, and has sent to the tenant the notices required by §§ 6–820 and 6–823 of this subtitle.

(b) *In general.*—A person may not bring an action against an owner of an affected property for damages arising from alleged injury or loss to a person at risk caused by the ingestion of lead by a person at risk that is first documented by a test for EBL of 25 g/dl or more performed on or after February 24, 1996, or 20 g/dl or more performed on or after February 24, 2001, unless the owner has been given:

(1) Written notice from any person that the elevated blood lead level of a person at risk is:

(i) Greater than or equal to 25 g/dl as first documented by a test for EBL performed on or after February 24, 1996; or

(ii) On or after February 24, 2001, an EBL greater than or equal to 20 g/dl as first documented by a test for EBL performed on or after February 24, 2001; and

(2) An opportunity to make a qualified offer under § 6–831 of this subtitle.

Many of the operative words and phrases in this statute, including "affected property" and "person at risk," are defined in Env. section 6–801. *See* footnotes 2 and 3, *supra.* Env. section 6–811 sets forth a required procedure for owners of affected properties to register them with the Department of the Environment, and Env. section 6–812 governs renewals of property registrations. Env. sections 6–815 and 6–819 mandate "risk reduction standards" and a "modified risk reduction standard," respectively, for owners of affected properties. Env. section 6–820 requires owners of affected properties to give tenants notices of tenants' rights, and Env. section 6–823 requires such owners to provide tenants with a "lead paint poisoning information packet."

In their complaint, the appellants allege that, properly interpreted, for certain tenants, Env. section 6–828(b) eliminates the duty of care their landlords (and landlords' agents) otherwise would owe them. Specifically, according to the appellants, the subsection means that an owner of an affected property does not owe a duty of care to a person at risk who, upon being tested between February 24, 1996 and February 23, 2001, had an EBL of 24 g/dl or less, or to a person at risk who, upon being tested on or after February 24, 2001, had (or has) an EBL of 19 g/dl or less. The appellants allege that the minor appellees in this case are within this category of persons at risk and therefore are not owed a duty of care. On that basis, they asked the circuit court to declare that under Env. section 6–828(b) the minor appellees and anyone acting on their behalves (including the other appellees) are "permanently barred" from pursuing a personal injury negligence action against any of the appellants who own or manage the properties in which the minor appellees were exposed to lead paint.

As we have explained, the circuit court dismissed the complaint in part upon a finding that the question of whether Env. section 6–828(b) precludes certain persons at risk, such as the Robinson/Leggette appellees, from pursuing lead paint personal injury actions against property owners/managers, such as Homewood, is being litigated in already pending personal injury cases, including the Robinson/Leggette appellees' tort case against Homewood, and that it therefore was not an appropriate subject for a declaratory judgment action. The court further found that, with respect to persons at risk in the position of the Hampton appellees, who had not yet filed a personal injury tort action against Polakoff, CFSP, or Chase, no controversy would be terminated by a declaratory judgment and no useful purpose would be served by allowing the declaratory judgment action to proceed.

The Maryland Uniform Declaratory Judgments Act ("Act"), codified at Md.Code (1957, 2002 Repl.Vol.), CJ sections 3–401 *et seq.*, is remedial and has as its purpose "to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." CJ section 3–402. The Act grants all Maryland courts of record except the District Court jurisdiction to "declare rights, status, and other legal relations whether or not further relief is or could be claimed." CJ section 3–403(a). It further allows that any person "whose rights, status, or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute, . . . and obtain a declaration of rights, status, or other legal relations under it." CJ section 3–406.

Generally, in a civil case, the circuit court when requested *may but need not* grant a declaratory judgment. CJ section 3–409, entitled "Discretionary relief," provides, in pertinent part:

(a) *In general.*—Except [as pertaining to actions for divorce or annulment], a court may grant a declaratory judgment or decree in a civil case, if it will serve to terminate the uncertainty or controversy giving rise to the proceeding, and if:

(1) An actual controversy exists between contending parties;

(2) Antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation; or

(3) A party asserts a legal relation, status, right, or privilege and this is challenged or denied by an adversary party, who also has or asserts a concrete interest in it.

* * * * * *

(c) *Concurrent remedies not bar for declaratory relief.*—A party may obtain a declaratory judgment or decree notwithstanding a concurrent common-law, equitable, or extraordinary legal remedy, whether or not recognized or regulated by statute.

In *Tanner v. McKeldin*, 202 Md. 569, 577, 97 A.2d 449 (1953), which addressed the substantively similar predecessor statute codified at Md.Code (1951), art. 31A, section 6, the Court of Appeals explained that the statutory language makes clear that the circuit court's exercise of jurisdiction over a declaratory judgment action is discretionary.[4] In *Grimm v. County Commissioners*, 252 Md. 626, 250 A.2d 866 (1969), the Court further explained that, while the Act grants a circuit court jurisdiction to decide legal issues by way of declaratory judgment "notwithstanding the availability of another adequate remedy either in law or in equity," it does not give a person " 'a right to declaratory relief whenever there is a right to a usual legal or equitable remedy; it says that the existence

---

**4.** The Court in *Tanner v. McKeldin* explained that soon after the Uniform Declaratory Judgments Act first was enacted in Maryland by 1939 Md. Laws ch.294, the Court held in *Porcelain Enamel & Mfg. Co. v. Jeffrey Mfg. Co.*, 177 Md. 677, 11 A.2d 451 (1940), that a declaratory judgment was not an appropriate procedure when the parties had a cause of action at law or in equity that was adequate and available. By the Laws of 1945, ch. 725, the General Assembly amended the Uniform Declaratory Judgments Act to include what was then codified in Code Md.1951, art. 31A, section 6, the predecessor statute to CJ section 3–409, to declare that "the real intention of the Act was that the existence of another adequate remedy at law or equity should not preclude a judgment for declaratory relief...." 202 Md. at 575, 97 A.2d 449.

of such a remedy shall not bar declaratory relief, not that ordinary relief and declaratory relief shall be co-extensive.'" 252 Md. at 632, 250 A.2d 866 (quoting *Mayor and City Council of Baltimore v. Seabolt,* 210 Md. 199, 209, 123 A.2d 207 (1956)). Thus, it is within the discretion of the circuit court "to refuse a declaratory judgment 'when it does not serve a useful purpose or terminate controversy.'" *Id.* (quoting *Staley v. Safe Deposit & Trust Co.,* 189 Md. 447, 457, 56 A.2d 144 (1947)).

Returning to the case at bar, it is evident that the appellants sought a declaratory judgment action for three purposes: to obtain an immediately appealable legal ruling interpreting Env. section 6–828(b) after their attempt to do so by motion for summary judgment in the Robinson/Leggette appellees' tort action failed; to ward off an imminent lead paint premises liability tort action by the Hampton appellees by obtaining a declaration of nonliability under Env. section 6–828(b); and to avert future lead paint premises liability tort actions by prospective plaintiffs falling beneath the testing categories covered by Env. section 6–828(b) by obtaining a general declaration of nonliability to any such prospective plaintiffs. The question before us is whether the circuit court abused its discretion in deciding not to entertain the declaratory judgment action as to any of the appellees.

### (a)

### *The Robinson/Leggette Appellees*

It is well-established Maryland law that, ordinarily, a declaratory judgment will not serve a useful purpose when the same issues to be resolved in the declaratory judgment action will be decided in pending litigation between the parties. The decision addressing this issue most comprehensively is *Haynie v. Gold Bond Bldg. Prod.,* 306 Md. 644, 511 A.2d 40 (1986), in which the Court of Appeals held that when a tort action is pending between the parties to a later-filed declaratory judgment action, and the legal issues on which the declaration is sought can be resolved in the tort action, in all but certain

limited and unusual situations it is an abuse of discretion for the circuit court to allow the declaratory judgment action to proceed.

The plaintiff in *Haynie v. Gold Bond Bldg. Prod.* suffered a work-related injury when a machine malfunctioned after his employer disengaged its automatic safety device. After collecting workers' compensation benefits, he sued his employer in tort. The employer moved for summary judgment on several grounds, including that under the workers' compensation laws it was immune from liability except for intentional acts meant to cause injury, and that no such acts could be proven. The court in the tort action denied the motion; the employer later refiled the motion, but the court did not rule on it.

In the meantime, with the tort action still pending, the plaintiff filed a declaratory judgment action asking the court to address the precise legal issues that the employer had raised in defense of the tort action, including whether its conduct constituted an intentional act for which it was immune from liability under the workers' compensation laws. The circuit court addressed the legal issues raised by the plaintiff, declaring, *inter alia,* that the employer's conduct did not amount to an intentional act.

The plaintiff appealed to this Court, which affirmed in an unreported opinion. He then applied for a writ of *certiorari.* The Court of Appeals granted the writ before the entire record was transmitted and without knowing that a tort action between the parties was pending. Upon obtaining that information, it ruled that the circuit court had abused its discretion in permitting the declaratory judgment action to proceed:

> The Declaratory Judgment Act, ... provide[s] that a party is not barred from obtaining a declaratory judgment merely because the controversy "is susceptible of relief through a general common law remedy...." But the Act does not provide that, once the common law remedy is actually invoked to provide relief in the controversy, and the common law action is still pending, the parties may also institute

a second lawsuit and obtain a declaratory judgment to resolve the same matter. Our cases have repeatedly held to the contrary.

*Id.* at 649–50, 511 A.2d 40 (footnote omitted). *See also Allstate v. Atwood,* 319 Md. 247, 572 A.2d 154 (1990) (observing that "[t]he normal rule is . . . that a pre-tort trial declaratory judgment action, to resolve an issue presented in the pending tort case, is prohibited"); *Maryland Auto. Ins. Fund v. Sun Cab Co.,* 305 Md. 807, 810, 506 A.2d 641 (1986) (noting that an issue "squarely presented for resolution in the tort action[]" was properly refused consideration in a declaratory judgment action); *Aetna Cas. & Sur. Co. v. Kuhl,* 296 Md. 446, 449 n. 1, 463 A.2d 822 (1983) (observing that "a declaratory judgment action brought by an insurer is inappropriate where the same issue is pending in another proceeding"); *Brohawn v. Transamerica Insurance Company,* 276 Md. 396, 406, 347 A.2d 842 (1975) (holding that, ordinarily, when the question to be resolved in the declaratory judgment action will be decided in a pending tort action, it is inappropriate to grant a declaratory judgment and doing so "would constitute an abuse of discretion"); *Abell Co. v. Sweeney,* 274 Md. 715, 337 A.2d 77 (1975) (holding that a party to a pending district court action is not entitled to pursue a declaratory judgment action in the circuit court addressing the same issues involved in the district court case).

The Court in *Haynie* further explained that, while the rule "precluding a declaratory judgment to resolve an issue when there is pending another action in which the same issue can properly be resolved[] is neither jurisdictional nor absolute[,]" a declaratory judgment only should be rendered when another such action is pending between the parties "in 'very unusual and compelling circumstances.' " 306 Md. at 652, 511 A.2d 40 (quoting *A.S. Abell Company v. Sweeney, supra,* 274 Md. at 721, 337 A.2d 77). It emphasized that the "inappropriate procedure" of permitting a declaratory judgment action to proceed in the face of a pending, related tort action between the same parties "might result in litigants misusing the declaratory judgment statute in order to circumvent the policy

against appeals from interlocutory orders and against piece-meal appeals." 306 Md. at 653, 511 A.2d 40. The Court then theorized:

> For example, a defendant in a tort case might have several legal defenses in addition to the contention that he committed no wrongful act. The parties might desire to have a trial of only one such legal defense, instead of incurring the expense and time of trying the entire case, on the ground that a ruling favorable to the defendant would be dispositive of the case. Rule 2–502, permitting the trial of a single question, was designed for such situation. A "problem" with the Rule 2–502 procedure, from the limited viewpoint of the parties in a particular case, might be that a ruling in the 2–502 proceeding unfavorable to the defendant could not, under the language of the rule, be appealed until "after entry of an appealable order or judgment." Consequently, unless the 2–502 decision disposes of an entire "claim" and is certified as a final judgment in accordance with Rule 2–602, it could not be immediately appealed. In order to evade the final judgment requirement, the parties, instead of invoking the authorized procedure set forth in Rule 2–502, might make the question of law the subject of a separate declaratory judgment action.

*Id.* (citations omitted). *See also Waicker v. Colbert,* 347 Md. 108, 115, 699 A.2d 426 (1997) (holding impermissible a declaratory judgment action seeking a determination of legal issues raised in a pending tort action even though the declaratory judgment action included a party who was not a party to the pending tort action; and reasoning that otherwise "almost any pending action could be interrupted and held at bay until the determination, in one or more declaratory judgment actions, of issues culled out of the pending action") (citation omitted).

 The declaratory judgment claims against the Robinson/Leggette appellees raise the precise issue raised in the pending tort claim between those appellees and Homewood. Plainly, it will serve no useful purpose for the same issue to be decided by way of declaratory judgment; indeed, the primary purpose of the declaratory judgment claims against the Robin-

son/Leggette appellees, as the circuit court recognized, is as an end-run around the final judgment rule that prevents Homewood from appealing the adverse ruling in the pending tort case at this juncture. *See Turnpike Farm Ltd. P'ship v. Curran,* 316 Md. 47, 49, 557 A.2d 225 (1989). Insofar as the Robinson/Leggette appellees are concerned, the declaratory judgment proceedings in the case at bar are a near approximation of the improper use of declaratory judgment proceedings hypothesized by the Court in *Haynie.* Accordingly, the circuit court properly exercised its discretion to dismiss the declaratory judgment claims against the Robinson/Leggette appellees.

### (b)

### *The Hampton Appellees*

There is no pending tort action between the Hampton appellees and any of the appellants. The appellants attempt to turn the holding of *Haynie* to their advantage by arguing that in the absence of a pending tort action the circuit court erred in dismissing their claims for declaratory relief against the Hampton appellees. They also seize upon the language of CJ section 3–409(c), providing that the availability of concurrent remedies is not a bar for declaratory relief, to support their argument.

The negative implication the appellants seek to draw from the holding in *Haynie* is illogical. While only rare and compelling circumstance will warrant a circuit court's exercising jurisdiction to entertain a declaratory judgment action when there is pending litigation between the parties on the same subject matter, that does not mean that when there is no such pending litigation the court *must* proceed with the declaratory judgment action. As CJ section 3–409(a) makes plain, so long as the parties are in an actual controversy, have antagonistic claims presaging imminent or inevitable litigation, or are asserting opposite or contradictory legal relations, statuses, rights, or privileges the court *"may* grant a declaratory judgment" when doing so "will serve to terminate the

uncertainty or controversy giving rise to the proceeding...."
(Emphasis added.) The Uniform Declaratory Judgments Act
is an enabling statute that confers upon certain courts the
power to grant equitable relief in the form of a declaration of
rights; it does not require them to do so, however, and indeed
spells out that they may exercise discretion not to do so.

When one of the justiciable controversy predicates is met,
the court has discretion to entertain or decline the declaratory
judgment action based on an assessment of its usefulness or
likeliness to terminate the controversy. That is the case
whether or not there is a pending action between the parties
on the same issue. *Haynie* and the related cases simply make
plain that when there is such a pending action the exercise of
discretion to accept the declaratory judgment action will be an
abuse except in highly unusual and compelling circumstances.
The cases do not stand for the converse proposition, that
unless such an action is pending it will be an abuse of
discretion to decline to proceed with the declaratory judgment
action. The court's discretion to decline declaratory relief
thus does not depend upon whether the parties already are in
litigation over the same issues. The court may decline to
exercise jurisdiction if it reasonably concludes that granting a
declaratory judgment will not serve to terminate the uncer-
tainty or controversy between the parties. *See Staley v. Safe
Deposit & Trust Co., supra,* 189 Md. at 457, 56 A.2d 144.

Likewise, while CJ section 3–409(c) makes plain that the
presence of an alternative remedy does not automatically
preclude declaratory relief, it does not limit the circuit court's
discretion to refuse to entertain a declaratory judgment pro-
ceeding.

In the case at bar, the court recognized that there was an
actual controversy between the Hampton appellees and some
of the appellants (Polakoff, CFSP, and Chase); that these
parties were asserting conflicting legal rights; and that litiga-
tion between them was likely and imminent. Thus, it found
the predicate justiciable controversy requirement to have been
met. Nevertheless, the court refused to entertain the action

because it would not terminate the controversy or otherwise serve a useful purpose. As noted above, our inquiry on appeal is whether that decision was an abuse of the court's discretion. For the following reasons, we hold that it was not.

As we shall discuss, courts interpreting the Uniform Declaratory Judgments Act and the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, which also gives trial courts discretion over whether to entertain declaratory judgment proceedings,[5] have concluded that, while a prospective tort defendant is not prohibited from bringing a declaratory judgment act defensively to establish nonliability, the practice is disfavored.

There is no Maryland case directly addressing the propriety of using a declaratory judgment action to obtain a ruling of nonliability in a prospective tort case, although, as we also shall discuss, Maryland cases have addressed in the related context of declaratory judgment insurance coverage cases factors relevant to a court's exercise of discretion to hear, or decline to hear, a declaratory judgment action. Probably the most widely cited case on the use by a putative tort defendant of a declaratory judgment action for a ruling of nonliability is *Cunningham Bros. v. Bail,* 407 F.2d 1165 (7th Cir.), *cert. denied,* 395 U.S. 959, 89 S.Ct. 2100, 23 L.Ed.2d 745 (1969).

In *Cunningham,* a general contractor filed a federal court declaratory judgment action against a masonry subcontractor and several of its employees who were injured when a scaffold collapsed. Some of the employees had brought state court personal injury suits, under the Illinois Structural Work Act, but others had not. The general contractor sought a declaration that it did not "have charge of" the work being performed

---

**5.** The pertinent federal statute, at 28 U.S.C. § 2201, states, in pertinent part:

*Creation of remedy.* In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. ...

by the employees at the job site, within the meaning of the pertinent statute, and therefore none of the employees had a cause of action for personal injuries against it under that statute. The general contractor maintained that the declaratory judgment action would serve a useful purpose because "instead of having to wait and be sued in different state and federal forums by the various injured parties, ... it [could] bring them together in one action...." 407 F.2d at 1167.

The federal district court declined jurisdiction, and the Seventh Circuit Court of Appeals affirmed. The court held that, "[r]egarding the individual [declaratory judgment] defendants, we are of the opinion that to compel potential personal injury plaintiffs to litigate their claims at a time and in a forum chosen by the alleged tortfeasor would be a perversion of the [Federal] Declaratory Judgment Act." 407 F.2d at 1167. It observed that the primary purpose of the federal act, " 'to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until his adversary should see fit to begin suit, after damage had accrued[,]' " is not advanced when damages have accrued and the declaratory judgment action merely is a substitute for "the traditional procedures for adjudicating negligence cases," with the parties' roles being reversed. *Id.* at 1167–68 (quoting *E. Edelmann & Co. v. Triple–A Specialty Co.,* 88 F.2d 852, 854 (7th Cir.), *cert. denied,* 300 U.S. 680, 57 S.Ct. 673, 81 L.Ed. 884 (1937)). The court explained:

> To so reverse the roles of the parties would affect more than merely the form of action, but would jeopardize those procedures which the law has traditionally provided to injured parties by which to seek judicial relief. Although "the existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate," Rule 57, Fed. Rules Civil Proc., we hold that such relief is inappropriate in the instant case since "more effective relief can and should be obtained in another procedure...."

407 F.2d at 1168 (quoting *Chicago Metallic Mfg. Co. v. Edward Katzinger Co.,* 123 F.2d 518, 520 (7th Cir.1941)) (citation omitted).

Many federal courts have followed the holding in *Cunningham,* and have held that a declaratory judgment action by a putative tort defendant seeking a finding of nonliability ordinarily is not a proper substitute for a traditional tort action between the parties. *See BASF Corp. v. Symington,* 50 F.3d 555 (8th Cir.1995); *Hanes Corp. v. Millard,* 531 F.2d 585 (D.C.Cir.1976); *Dow Jones & Co. v. Harrods, Inc.,* 2002 WL 31307163, 2002 U.S. Dist. LEXIS 19516 (October 11, 2002); *Morrison v. Parker,* 90 F.Supp.2d 876 (W.Dist.Mich.2000); *Friedman v. Geller,* 925 F.Supp. 611, 613 (E.D.Wis.1996); *Douglas v. Don King Prods., Inc.,* 736 F.Supp. 223, 225 (D.Nev.1990); *Koch Eng'g Co. v. Monsanto Co.,* 621 F.Supp. 1204, 1207 (E.D.Mo.1985); *Sun Oil v. Transcontinental Gas Pipe Line Corp.,* 108 F.Supp. 280, 282 (E.D.Pa.1952), *aff'd,* 203 F.2d 957 (3rd Cir.1953). *Accord* 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure,* § 2765 at 638–39 (3d ed. 1998) ("The courts also have held that it is not one of the purposes of the declaratory judgment act to enable a prospective negligence action defendant to obtain a declaration of nonliability. They have felt that even though a declaratory action might reduce multiple litigation with a number of injured persons, this result should not outweigh the right of a personal-injury plaintiff to choose the forum and the time, if at all, to assert his claim."). *See also Pub. Serv. Comm'n of Utah v. Wycoff Co.,* 344 U.S. 237, 248, 73 S.Ct. 236, 97 L.Ed. 291 (1952) (criticizing plaintiff's use of the Federal Declaratory Judgment Act for procedural advantage but affirming dismissal of action for lack of jurisdiction).

Likewise, state appellate courts applying the Uniform Declaratory Judgments Act have held that ordinarily a declaratory judgment action is not properly brought by a putative tort defendant for the purpose of obtaining a declaration of nonliability. *See Abor v. Black,* 695 S.W.2d 564 (Tex.1985) (holding that the trial court had jurisdiction over a declaratory judg-

ment action but should have declined to exercise it because it deprived a prospective tort plaintiff of the right to determine whether to file suit and if so when and where); *Howlett v. Scott*, 69 Ill.2d 135, 13 Ill.Dec. 9, 370 N.E.2d 1036 (1977) (same).

Many of the federal court decisions holding that it is not a proper use of the declaratory judgment proceeding to obtain an anticipatory declaration of nonliability have analyzed the issue using factors articulated by the Court of Appeals for the Sixth Circuit in another seminal case, *Grand Trunk W. R.R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984). There, the court observed that, in deciding whether a declaratory judgment action will serve a useful purpose, federal courts should consider, *inter alia*, whether the declaratory judgment action 1) will terminate or settle the controversy; 2) will serve to clarify the legal relations in issue; 3) is being used merely for "procedural fencing" or "to provide an arena for a race for *res judicata*"; and 4) whether there is an alternate remedy that is better or more effective to resolve the controversy.[6] *Id.*

The factors our Court of Appeals considered important in *Brohawn v. Transamerica Insurance Company, supra,* 276 Md. at 406, 347 A.2d 842, in deciding whether a circuit court should exercise discretion to decline to hear a declaratory judgment action seeking a determination of third-party insurance policy coverage *vel non* when the underlying tort claim for which coverage is sought is pending, include one similar to the third factor discussed by the court in the *Grand Trunk W. R.R. Co.* case. The Court in *Brohawn* explained that, in deciding whether to exercise jurisdiction, the court should consider, together with the factors of terminating the controversy and deciding the parties' rights,

---

6. The court included one additional factor, pertinent to federal court litigation, which is whether the use of the declaratory judgment procedure would increase friction between the federal and state courts and improperly encroach upon state court jurisdiction. 746 F.2d at 326.

the effect of granting a judgment on the rights of all parties to the action. If the granting of the judgment would unduly inconvenience or burden the parties, or allow one party to wrest control of the litigation from another and cause a confusing alteration of the burden of proof, the court should refuse to grant the relief sought.

276 Md. at 406, 347 A.2d 842.

■ We conclude from the authorities discussed above that the factors relevant to whether a circuit court should exercise discretion to hear a declaratory judgment action by a putative tort defendant against a prospective tort plaintiff are whether the proceeding will terminate the controversy between the parties or will otherwise settle or clarify their conflicting legal positions; whether going forward with the declaratory judgment case will negatively affect the rights of any party, by permitting procedural fencing or other tactical strategies, including those designed to prevent the party who traditionally would be the tort plaintiff from choosing the time and place of suit, or wresting control of the prospective litigation from him; and whether the parties' controversy can be more effectively and efficiently decided by the alternate remedy of a common-law tort action. Application of these factors to the case at bar supports the circuit court's decision to decline jurisdiction.

■ There is a substantial likelihood that a decision in this declaratory judgment action will not terminate the controversy between the Hampton appellees and the appellants who own and manage the premises in which the minor Hampton appellee allegedly was exposed to lead paint. The essence of the controversy between these parties is the responsibility *vel non* of those appellants for damages for personal injuries already sustained by the minor Hampton appellee as a consequence of exposure to lead paint on the premises. If, on declaratory judgment, the court construes Env. section 6–828(b) as the appellants contend it should be construed, they will be declared not liable to the Hampton appellees. If the court rejects that construction, however, the controversy be-

tween the parties will continue. Thus, a decision in the declaratory judgment action will not necessarily terminate the controversy between the parties and thereby serve a useful purpose.

Turning to the second factor, permitting the appellants, as putative tort defendants, to obtain an anticipatory ruling on what would be a defense to the Hampton appellees' personal injury tort claim against them would give the appellants control over the timing of litigation, and its venue, forcing the Hampton appellees into litigation they might otherwise delay filing (or that they might not bring at all). Under Maryland common law, minor tort plaintiffs, like Brenda Hampton, are privileged to file suit for tort claims until after they attain majority. *Piselli v. 75th Street Medical,* 371 Md. 188, 808 A.2d 508 (2002). The declaratory judgment proceeding against the Hampton appellees is a tactical device to defeat this privilege. It serves as a preemptive strike that strips the minor Hampton appellee of her right to await filing suit until the period of minority has expired. In addition, like the declaratory judgment sought against the Robinson/Leggette appellees, it is a vehicle to isolate defenses for decision to permit an immediate appeal of an adverse ruling, otherwise not available in the tort action setting, and to obtain a ruling having *res judicata* effect. It is the very sort of "procedural fencing" and "race to *res judicata* " admonished against in *Grand Trunk W. R.R. co. v. Consolidated Rail Corp., supra,* and the cases following it.

Finally, the parties' controversy can be most effectively and efficiently resolved in a traditional tort case in which all the claims and all the defenses—and all the evidence necessary to their determination—can be presented and decided together. The use of the declaratory judgment procedure to cull out defenses to a potential tort case and present them for decision one-by-one is antithetical to any concept of judicial economy and contrary to the Maryland policy against piecemeal appeals and decision-making. *See Maryland–National Capital Park & Planning Comm'n v. Smith,* 333 Md. 3, 7, 633 A.2d 855 (1993); *Russell v. American Sec. Bank,* 65 Md.App. 199, 202,

499 A.2d 1320 (1985). In addition, the defense being raised in this declaratory judgment action involves the interpretation of a statute that only applies when certain factual predicates have been established; and the determination of those factual predicates can best be made in a single tort proceeding in which all the facts are being decided, not in a declaratory judgment proceeding focused on a particular defense.

The circuit court properly exercised its discretion to refuse to entertain the declaratory judgment claims against the Hampton appellees, because doing so would not terminate the parties' controversy or serve a useful purpose.

### (c)

### *The Remaining Appellees: "All other similarly situated Litigants, named or unnamed who may in the future claim Injuries due to alleged lead Exposures in the State of Maryland" and the Kerpelman Firm*

The appellants do not address the remaining appellees in their primary or reply briefs. The appellees do not address them in their brief either. Nevertheless, we shall touch on the topic of the court's dismissal of the claims against these appellees.

█ With respect to the broad category of litigants who may ever claim injuries due to lead exposure in the State of Maryland, it is clear that, under CJ section 3–409(a), there is no justiciable controversy between that undefined and undefinable group of potential tort plaintiffs and the appellants. The declaratory judgment claims respecting this group appear simply to be an attempt to obtain an advisory opinion about the meaning of Env. section 6–828(b) on a set of hypothetical, abstract, and necessarily incomplete facts, without an existing case or controversy. This is an improper and impermissible use of the declaratory judgment process, and the court was required to dismiss these claims as a matter of law.[7] *Reyes v. Prince George's County*, 281 Md. 279, 289, 380 A.2d 12 (1977);

---

7. In oral argument in this Court, counsel for the appellants explained that one of the purposes of bringing the declaratory judgment action

*Hamilton v. McAuliffe,* 277 Md. 336, 339–40, 353 A.2d 634 (1976); *Tanner v. McKeldin, supra,* 202 Md. 569, 97 A.2d 449.

Finally, at oral argument in this Court, counsel for the appellants candidly stated that the Kerpelman firm was included as a defendant in the declaratory judgment action only because the majority of personal injury lead paint tort cases brought in the Circuit Court for Baltimore City have been filed by that firm, and not because there is an existing or imminent controversy or clash of rights between the appellants and the firm. Thus, the firm's only function as a defendant was as the agent of some of the appellees and as a potential agent of others. Because the court properly exercised its discretion to dismiss the declaratory judgment claims against the other appellees, it also properly dismissed the claims against the Kerpelman firm.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY THE APPELLANTS.**

---

was to obtain a ruling on the constitutionality of Env. section 6–828(b), if in fact it provides immunity to property owners in some situations. Counsel stated that he anticipated that one of the responses the appellees would make to the substantive statutory interpretation issue would be that if the statute confers immunity, it violates the appellees' federal and state constitutional rights. The appellants thus were trying to position the case for a constitutional ruling. Not only is it improper to use the declaratory judgment process to obtain an advisory opinion, we note that appellate courts are loathe even when there is a justiciable controversy to decide a constitutional issue that is not squarely presented and necessary for determination. *Petite v. United States,* 361 U.S. 529, 531, 80 S.Ct. 450, 4 L.Ed.2d 490 (1960) (holding that a court should not anticipate a question of constitutional law in advance of the necessity for deciding it); *Prof. Staff Nurses Ass'n v. Dimensions Health Corp.,* 346 Md. 132, 138–39, 695 A.2d 158 (1997); *Tanner v. McKeldin, supra,* 202 Md. at 580, 97 A.2d 449 (observing that "constitutional questions are not to be dealt with abstractly, and so it is an almost undeviating rule of the American courts, both State and Federal, that a court will not decide constitutional questions except when concrete and specific issues are raised by actual cases").